## Pittsburgh, Fort Wayne and Chicago R. R. Co. v. Louis Moore, by His Next Friend.

1. EVIDENCE—*Evidence to Prove Statutes of This State Not Necessary.* —It is not necessary to offer evidence to prove the statutes of this state set up in the declaration.

2. APPELLATE COURT PRACTICE—*Exception Must be Preserved to Court's Ruling in Order to Avail of It.*—Appellant can not avail of error consisting of improper remarks made by counsel in the presence of the jury, where no exceptions were preserved to any ruling of the court or failure to rule.

3. INSTRUCTIONS—*Omitting Element of the Intelligence of a Child.*— An instruction that by ordinary care the law means such a degree of care under the circumstances and in the situation in which the plaint- iff was placed, so far as they may be shown by the evidence, as an ordi- narily prudent child would exercise under the circumstances and in the same situation, for one of his age and experience, is subject to criticism in that it omits the element of the intelligence of the child.   The instruc- tion instead of the phrase "for one of his age and experience," should have been "for one of his age, capacity and experience."

4. SAME—*Stating Certain Matters as Constituting Negligence, Prop- erly Refused.*—Instructions which tell the jury in effect that certain matters mentioned in the instruction constitute negligence, are prop- erly refused.

5. HYPOTHETICAL QUESTIONS—*Where Court in Its Discretion May Allow a Question in Part Without Any Support in the Evidence.*—The court in its discretion may allow a hypothetical question in part with- out any support in the evidence upon the statement of counsel that the lacking evidence would be thereafter supplied.

6. DAMAGES—*Testimony of Physician as to Consequences Which Are Contingent, Speculative or Merely Possible, Are Not Proper.*—Testimony as to consequences of an injury which are contingent, speculative or merely possible, are not proper to be considered in ascertaining the damages.

7. SAME—*Degree of Proof Required as to Particular Results of Injury.*—The jury should take into consideration as an element of dam- ages only such testimony on the subject of the permanency of the injuries of the plaintiff as show that there is a reasonable certainty of a particular result specified.

Trespass on the Case, for personal injuries.  Appeal from the Cir- cuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge presiding.  Heard in this court at the October term, 1902.  Reversed and remanded.  Mr. Justice WINDES, dissenting.  Opinion filed Novem- ber 12, 1903.  Rehearing denied and opinion modified November 23, 1903.

Statement.—Appellee, a minor aged twelve years, on January 24, 1899, being injured by one of appellant's locomotive engines with train of cars attached thereto, brought suit by his next friend to recover damages, a trial of which before the court and a jury resulted in a verdict in his favor of $15,000 and a judgment thereon, from which this appeal is taken.

The declaration consists of thirteen counts, making various charges of negligence which it is alleged caused appellee's injuries, including a failure to warn appellee of the approach of the locomotive and train, negligence generally in the operation of its train, failure to station a lookout or lookouts to warn plaintiff, and failure to warn him by any barrier or suitable device, as well as negligence in failing to comply with certain statutes of this state and divers ordinances of the city of Chicago which are set up in the several counts. No evidence was offered on the trial, of any statutes, or of the ordinances of the city set up in the declaration, and the verdict, if justified, must be based upon the other counts referred to. The plea was the general issue.

Among other instructions given for appellee was the following:

"11. By ordinary care the law means such a degree of care under the circumstances and in the situation in which the plaintiff was placed, so far as they may be shown by the evidence, as an ordinarily prudent child would exercise under the circumstances and in the same situation, for one of his age and experience."

At the close of the plaintiff's evidence appellant asked the court, by a written instruction, to direct a verdict in its favor, which was overruled. The request was renewed at the close of all the evidence and again overruled.

GEORGE WILLARD and CHARLES E. ZOLLARS, attorneys for appellant.

JOHN B. BRADY and MOSES, ROSENTHAL & KENNEDY, attorneys for appellee.

MR. JUSTICE WINDES delivered the opinion of the court.

For appellant it is claimed that a verdict in its favor should have been directed by the court, for the reason that it appears from the evidence that the appellee failed to exercise ordinary care for his own safety, and that appellant was guilty of no negligence. It is unnecessary to state the evidence of the various witnesses bearing upon these two questions, since, for reasons which will be stated, a new trial must be awarded, and after a full consideration of the evidence, in the light of counsel's arguments, we think it presented matters for the consideration of the jury, and that the learned trial judge did not err in overruling appellant's motions to direct a verdict in its favor. While it is true that no evidence of the statutes or ordinances set up in different counts of the declaration was offered, it does not follow that there could be no recovery under the other counts mentioned in the statement preceding this opinion, which, if supported by the evidence, would justify a recovery without reference to the ordinances. It was not necessary to offer evidence to prove the statutes of this state set up in the declaration.

Counsel for appellee, during the progress of the trial, made numerous improper remarks in the presence of the jury, which were calculated to arouse prejudice against the appellant, but while numerous objections were made by appellant's counsel, no exceptions were preserved to any ruling of the court or failure to rule. Appellant can not, as has been frequently held, avail of error of this kind without an exception having been preserved either to the court's ruling or its failure to rule. Quincy Gas. & E. Co. v. Baumann, 203 Ill. 295, and cases cited.

It is further claimed that instruction eleven, quoted in the statement, is erroneous because it uses the word " child " instead of " person," but we are of opinion that the jury could not have been misled by the instruction for that reason. We think, however, that the instruction is subject to criticism in that it omits the element of the intelligence of the child. The instruction, instead of the phrase " for one

P., F. W. & C. R. R. Co. v. Moore.

of his age and experience," should have been "for one of his age, capacity and experience."   R. R. Co. v. Slater, 129 Ill. 91–9; City of Chicago v. Keefe, 114 Ill. 222–9.

The error, if any, in this regard, may be corrected on another trial.

The appellee's eighth instruction, which is criticised, presents no ground for reversal, nor does the refusal of appellant's instructions Nos. 2, 3, 4, 5, 6, 7 and 8. We think the eighth instruction of appellee, which relates to the question of damages, was proper, and the refused instructions were properly refused for the reason that all of them, except the fifth, tell the jury in effect that certain matters mentioned in the instructions were negligence, which was a question that should have been left to the jury. The fifth refused instruction is abstract, and even if correct, which we do not decide, there was no error in its refusal.

It is claimed that the court erred in permitting two physicians, who were called as experts, to give their opinions as to the cause of appellee's condition at the time of the trial in answer to hypothetical questions, which are in part claimed to be without any basis from the evidence in the case. It is true that at the time the questions were permitted to be answered they were in part without any support in the evidence, but the court allowed them to be answered upon the statement of appellee's counsel that the lacking evidence would be thereafter supplied. This evidence was not supplied, because, as appears from the record, appellee's counsel was unable to produce the physician who attended appellee for his injuries, by reason of a serious surgical operation which said physician was required to undergo during the progress of the trial. This evidence not being produced, the trial judge ruled out the evidence based upon the hypothetical questions.  We are of opinion that it was within the discretion of the court to permit these questions to be answered under the circumstances shown, and its ruling excluding the evidence when appellee's counsel was unable to make good his promise, was proper, and appellant's counsel did not see fit to present an instruction to the court asking that the jury disregard the

excluded evidence.   The whole record in this regard considered, we think there was no reversible error.

Dr. Moyer, called for appellee, testified to having examined him in April, 1902, a few weeks prior to the trial, and to what was his then condition, and on being asked his opinion as to appellee's future condition, said that it "is so uncertain that one can not say; it would be largely speculative, any answer you might make to that."   He was also asked, on re-direct examination, the following questions, and made the answers following, to wit:

"Q.   Now, Jacksonian epilepsy, might it not follow such an injury as this?

Mr. Zollars:   I object.

The Court:   Objection overruled.

(To which ruling of the court the defendant, by its counsel, then and there duly excepted.)

A.   Yes, sir, epilepsy is not an infrequent result of such an injury.

Mr. Brady:   Just briefly, why would such an injury as this that you found in this boy be liable to lead to epilepsy? why? explain it to the jury.

A.   It is an irritation that comes from the scar tissue on the surface of the brain, and I suspect that the adhesion between the brain and the membrane of the skull is really the primary trouble; that is what does it; the brain has lost its natural mobility."

Later, Dr. Leeming, called for the appellee, was asked to define Jacksonian epilepsy, which he did at some length, to the effect, in substance, that it was an epilepsy which had its origin in some localized spot in the brain, and was named for a man called Jackson.   He was then asked the following question and made the answer following, to wit:

"Q.   What, Doctor, in your opinion, will be the natural result, if anything, of this injury, of this fractured skull? A.   Well, I can't say what will be its natural result.   I can't tell what will be the natural result.   I don't think there is any natural result, because I can't tell exactly what the condition of the inner side of the skull is; what the condition of the membranes covering the brain may be."

Counsel for appellant, after this evidence was given, moved to strike out all that portion of the evidence relat-

ing to Jacksonian epilepsy because it was not shown that it had any connection with appellee; whereupon, against the objection and exception of appellant's counsel, the court permitted the witness to be asked the following question, to which he made the answer following, to wit:

"Mr. Brady: · Doctor, for the kind of injury that you found to this boy in his head, are there any probabilities that Jacksonian epilepsy may follow from it? A. There is a condition on the boy's brain, and in the membrane covering his brain, which are the exact conditions which produce Jacksonian epilepsy; but whether it will produce it in this boy or not, of course I don't know."

Another witness called for appellee, Dr. Allport, was, over the objection and exception of appellant, allowed to define and describe Jacksonian epilepsy, and he was also asked the following question, to which he made the following answer, to wit:

" Mr. Brady : What would you say, Doctor, as to the probabilities or possibilities of this injury, with this scar tissue now as you have described it, producing Jacksonian epilepsy ?

Mr. Zollars : I object.

The Court : He may give his best judgment on it.

(To which ruling of the court the defendant, by its counsel, then and there duly excepted.)

The Court : Whether it is likely, or probable, or what.

A. This is exactly the class of cases in which Jacksonian epilepsy develops; there is a depression of the skull, with loss of some of the skull substance, scar tissue, adhesions, pressure or tension on the brain at a certain point."

We are of opinion that it was error to allow this evidence to go to the jury. Its nature is entirely too uncertain and speculative to be a basis for the assessment of damages. It does not amount to an opinion of the probable consequences of the injury which is held to be sufficiently certain to be admissible. In 1 Sutherland on Damages, 195, the author says an injured party "is entitled to recover compensation for such elements of damage as are likely to occur; the jury may proceed upon reasonable probabilities."

In 2 Jones on Evidence, section 380, the author says

that the opinions of physicians and surgeons may be admitted to show " the probable future consequences of an injury when the consequences anticipated are such as in the ordinary course of events may be reasonably expected to happen, and are not merely speculative or possible."

In 1 Wharton on Evidence, Sec. 441, the author says:

" A surgeon is admissible to prove the nature of a wound and its probable cause and effects, though it has been held not admissible for a surgeon to give an opinion on merely speculative data."

The cases cited by both these authors in the main sustain their statements.

In the well-considered case of Strohm v. R. R. Co., 96 N. Y. 306, the Court of Appeals of New York, say:

" Consequences which are contingent, speculative or merely possible, are not proper to be considered in ascertaining the damages. It is not enough that the injuries received may develop into more serious conditions than those which are visible at the time of the injury, nor even that they are likely to so develop. To entitle the plaintiff to recover present damages for apprehended future consequences, there must be such a degree of probability of their occurring as amounts to a reasonable certainty that they will result from the original injury."

The cases cited in support of the ruling sustain it, and it is re-affirmed in Tozer v. R. R. Co., 105 N. Y. 617, and in McClain v. R. R. Co., 116 N. Y. 460–7, in which it was held that the opinions of experts as to what might follow or develop from personal injuries was " mere speculation as to what may be the future condition of the patient resulting from an injury, and does not represent the judgment of the expert as to what will be its effect."

In the late case of Blate v. R. R. Co., 44 N. Y. Supp. 615, the language used in the Strohm case is quoted as the rule in New York as to such evidence, and it was held to be reversible error to allow testimony of an expert that a plaintiff's injuries, to which he testified, " sometimes " had a particular result, which the witness specified.

In Block v. R. R. Co., 89 Wis. 371–80, it was held error to charge the jury that it could not take into consideration

as an element of damages any testimony on the subject of the permanency of the injuries of the plaintiff unless they found " from the testimony that there is reasonable probability that the injury that he has sustained " will be permanent and lasting. The court held, citing cases, that " the degree of proof must amount to reasonable certainty."

To a like effect in principle are Fry v. Ry. Co., 45 Ia. 416; Ry. Co. v. Cosby, 107 Ind. 32–5, and R. R. Co. v. Stoner, 49 Fed. Rep. 209–12. In the Fry case it was said that the jury " had no right to allow damages for mere possibilities."

Our Supreme Court has not, so far as we can discover, passed on the question presented.

The jury awarded the large damages in this case, no doubt, upon the theory that plaintiff might possibly, in the future, have Jacksonian epilepsy. We will not discuss the details of the evidence as to the extent of plaintiff's injuries. From a careful examination of it we are of opinion that the consideration by the jury of this incompetent evidence, and the possibility of appellee's becoming a sufferer from Jacksonian epilepsy, materially affected the amount of the verdict, and is cause for reversal.

The majority of the court, not including the writer, is of opinion that the verdict being so affected, but being unable to determine how much, from a consideration of the evidence in the record as to the nature of appellee's injuries and the uncertainty as to their effect upon him in the future, a remittitur will not cure the verdict. The judgment is therefore reversed because of the error in admitting incompetent evidence, and the cause remanded.

Opinion on petition for rehearing by Mr. Justice WINDES.

After a further consideration of this case on petition for rehearing, the previous decision of this court in Batchelor v. Union Stock Yards & Transit Co., 88 Ill. App. 395, as well as the exhaustive argument of appellee's counsel, we think the Batchelor case, on the question here involved, was decided incorrectly, and we adhere to the conclusions stated in our first opinion herein.