Argued February 18; reversed and remanded March 16; rehearing
denied May 11, 1948

# HALE *v.* ELECTRIC STEEL FOUNDRY CO.

191 P. (2d) 396. 192 P. (2d) 257

Robert T. Mautz, of Portland, argued the cause for appellant. On the brief were Wilbur, Beckett, Oppenheimer, Mautz & Souther, of Portland.

Gunther F. Krause, of Portland, argued the cause for respondent. On the brief were Krause & Evans and Irving Korn, of Portland.

Before ROSSMAN, Chief Justice, and KELLY, BAILEY, HAY and BRAND, Justices.

KELLY, J.

Plaintiff was employed as a laborer by defendant from about January 20, 1945 to and including March 12, 1945. On March 12, 1945, beginning at 5 A.M., plaintiff was working as a helper in loading one of defendant's electric furnaces and about noon of the last named date, while attempting to prevent a piece of metal weighing approximately 100 pounds from falling off of the part of the loading device, known as a spoon, on to plaintiff's foot, plaintiff sustained the

injury that is the basis of his claim against defendant herein.

The loading device in suit consists of a roller, placed horizontally across the ledge in front of the door or opening through which metal is deposited in the furnace for melting, and the spoon which is a slightly concave metal plate or receptable upon which the pieces of metal are placed rests upon the rolls and is moved back and forth thereupon. Plaintiff testified that the spoon, while in position to be loaded, is ''a little better than waist high.'' To it is attached a rod or pole about ten feet long by means of which the spoon is pushed through the door or opening of the furnace and its load of metal is then deposited without subjecting the operator of such rod or pole to severe heat from the open door of the furnace.

The name applied to the workman, whose duty it is to place the pieces of metal upon the spoon, is furnace helper; and the name designating the one who operates the rod or pole attached to the spoon is furnace man.

In his complaint filed June 27, 1945, a plaintiff alleges the corporate capacity of defendant; that at all times mentioned therein defendant was engaged in operating electric furnaces in the city of Portland, Oregon, and that on or about the 12th day of March, 1945, plaintiff was in the employ of defendant as a laborer. These allegations are admitted by defendant in its answer to plaintiff's complaint.

The plaintiff further alleges in his complaint that—

''While plaintiff was attempting to place a slab of iron weighing approximately 100 pounds on the spoon, the slab slipped off the spoon and in trying to prevent the iron from falling on his foot, plaintiff was thrown into a position which wrenched

and injured his back, causing a tearing, bruising and damaging of the nerves, muscles, tendons and ligaments of his back and of the nerves, muscles, tendons and ligaments of the sacroiliac joints of his back and causing plaintiff to suffer great physical pain and mental anguish, loss of time from his employment and permanent injuries to his back, to his damage in the sum of $15,000.00.''

Specifications of alleged negligence on defendant's part are set forth in paragraph III of plaintiff's complaint as follows:

"III

"Plaintiff's injuries were caused solely by the carelessness, recklessness and negligence of the defendant in that defendant failed and neglected to provide adequate assistance and to direct that slabs weighing as much as 100 pounds should be lifted by two men, or by power machinery; in that defendant failed and neglected to provide plaintiff with a shield or guard against the terrific heat generated by the furnace and the spoon; in that defendant failed and neglected to provide plaintiff with a proper and secure footing in his place of work, and, on the contrary, permitted quantities of ash, molten metal and rubble to accumulate and make plaintiff's footing insecure; in that defendant failed and neglected to properly instruct plaintiff in proper methods of doing the aforesaid work and safeguarding himself from injury; in that defendant failed and neglected to use every device, care and precaution that it was practicable to use in order to protect plaintiff against the injuries sustained.''

Eleven assignments of error are presented by defendant:

Assignment No. I is based upon the trial court's denial of defendant's motion for nonsuit and a directed verdict.

Assignments Nos. II, III, IV and V are based

respectively upon the court's refusal to withdraw from the jury the respective charges of negligence alleged by plaintiff.

Assignments Nos. VI and VII present the question whether the provisions of the Employers' Liability Act are applicable to the cause in suit.

Assignment No. VIII assumes that there is no substantial evidence in the record that the defendant failed or neglected to employ any device, care or precaution practicable to use to protect plaintiff against the injuries he sustained.

Assignment No. IX challenges the propriety of the court in instructing the jury in part as follows:

"In awarding damages (to plaintiff) you may take into consideration * * * * his mental anguish * * *."

Assignments Nos. X and XI charge the trial court erred in permitting the plaintiff to answer respectively the following questions:

"What could the company have done that would have prevented this type of injury to you?"

And "what would have been the condition if an additional man had been employed to lift these pieces, the kind you had to lift by yourself?"

The first five assignments are based upon the contention that there is no substantial evidence in the record to support plaintiff's allegations of negligence on the part of defendant.

Upon the issue arising from plaintiff's allegation and defendant's denial that defendant failed and neglected to provide adequate assistance and to direct that slabs weighing as much as 100 pounds should be lifted by two men or by power machinery, plaintiff testified to the effect that while he had lifted pieces like the one that caused his injury, nevertheless he

really needed help to put it on the spoon; and that while there was a crane near the furnace with prongs like an iceman's tongs on it, that he was not allowed to use it; that the furnace man with whom he was working would not allow plaintiff to use it. Plaintiff also testified that many times he had assisted another helper in putting 100 pound pieces on the spoon.

Upon the issue wherein plaintiff charges defendant with negligence in failing and neglecting to provide plaintiff with a shield or guard against the heat generated by the furnace and the spoon, plaintiff testified as follows:

"Q Did the company furnish anything to you to protect you against the heat of that furnace when you were working in front there?
A No.
Q Were there any shields or any guards that could be set up in front of that furnace opening while you were working there?
A Well, it could have.
Q Well, were there any there?
A No."

Upon plaintiff's charge of negligence on defendant's part in that defendant failed and neglected to provide plaintiff with a proper and secure footing in his place of work and, on the contrary, permitted quantities of ash, molten lead and rubble to accumulate and make plaintiff's footing insecure, plaintiff testified that at the time of the accident in suit, on the ground and on the walk there were pieces of steel, rock, coke and stuff, all that stuff from the furnace on the walk and that he, plaintiff, was standing on that, and as he attempted to place the piece of metal on the spoon, he was standing on pieces of steel and pieces of metal and that there was rubbish of all kinds on the floor.

In support of assignments IV and V defendant contends that there is no testimony that the alleged negligence of defendant was the proximate cause of plaintiff's injury, and as to assignment No. V, challenging the propriety of submitting to the jury the issue whether a proper instruction was given by defendant upon the proper methods to be employed by plaintiff in doing his work, it is contended by defendant that submission of that issue to the jury was error, because the defendant introduced evidence in support of its claim that such instruction was given plaintiff and defendant's testimony in that regard was not denied, discredited or contradicted by plaintiff. We think that the testimony introduced by defendant merely constitutes a contradiction of the evidence given by plaintiff on that phase of the case.

Upon plaintiff's charge of negligence in that defendant failed and neglected to properly instruct plaintiff in proper methods of doing the aforesaid work and safeguarding himself from injury, plaintiff testified that he was not allowed to open or close the furnace door unless he was told to do so. While plaintiff testified that when he came to work for defendant, the foreman or one of the furnace men told him generally what his duties were, plaintiff also testified as follows:

"Q Were any orders given by this furnace man or any other foreman there regarding how these pieces were to be picked up and put into the spoon?

A Well, the furnace man, he just told us to pick iron up and lay it over. That is the instruction he gave me, and I done just what he told me. I couldn't use my own judgment, I had to do what he told me. I had to lay it on."

Plaintiff also testified that the box from which he

picked the pieces of iron was about twelve feet from the spoon upon which he placed them, thereby requiring him to carry those pieces of iron about twelve feet in order to reach a place where he could deposit them upon the spoon.

We cannot agree with defendant that plaintiff's statement of the safety precautions, which could have been but were not taken by defendant, was merely an expression of defendant's conclusion. It was a statement of what might have been.

■ As we understand the record, there is testimony which the jury might and evidently did consider substantial in support of plaintiff's allegations of negligence.

It would unduly extend this opinion to quote such testimony in its entirety; but simply because it came from plaintiff himself, we cannot disregard it as not being substantial evidence. That was a matter for the jury to determine.

■ We find no direct statement by plaintiff that he suffered mental pain or anguish. In an opinion by Mr. Justice Lusk, the authorities upon this phase of the instant case are reviewed and the restrictive principle theretofore applied by this court was abandoned. *Fehely v. Senders*, 170 Or. 457, 135 P. (2d) 283, 145 A. L. R. 1092. In the light of the authorities there cited, it cannot be said that physical pain alone has been proven unless there is an express direct statement by the sufferer that he experienced mental as well as physical pain.

■ As to assignments Nos. VI and VII, to the effect that the trial court erred in withholding from the jury the question whether the work performed by plaintiff involved risk or danger, we are constrained to hold that error was thereby committed.

Thirty-three years ago, the same question was presented, and speaking through the late Mr. Justice BURNETT, this court said:

> \* \* \* "Whether the work involved a risk or danger to employees or the public, and whether it was practicable to use the device mentioned in the pleadings for the safety of those engaged in the service, are questions of fact put in issue by the pleadings to be determined by the jury. By his peremptory instruction that the case comes under the Employers' Liability Act, \* \* \* the trial judge to all intents and purposes took from the jury the right to decide these issues of fact." *Wolsiffer v. Bechill,* 76 Or. 516, 526, 146 P. 514, 516, 149 P. 533.

The same course was taken by the learned trial judge in the instant case. In cases wherein the "and generally clause" of the Employers' Liability Act has been invoked, as in the case at bar, this court has universally adhered to the holding in *Wolsiffer v. Bechill,* supra; *Yovovich v. Falls City Lumber Co.,* 76 Or. 585, 149 P. 941; *Mackay v. Commission of the Port of Toledo,* 77 Or. 611, 152 P. 250; *Wheeler v. Nehalem Timber Co.,* 79 Or. 506, 155 P. 1188; *Poullos v. Grove,* 84 Or. 106, 164 P. 562; *Rorvik v. North Pacific Lumber Co.,* 99 Or. 58, 190 P. 331, 195 P. 163; *McCauley v. Steamship "Willamette", et al.,* 109 Or. 131, 215 P. 892; *Ernest Jodoin v. Luckenbach Steamship Co., Inc.,* 125 Or. 634, 268 P. 51; *Seldon Coomer v. Supple Investment Company,* 128 Or. 224, 274 P. 302; *Freeman v. Wentworth & Irwin, Inc.,* 139 Or. 1, 7 P. (2d) 796.

In *Davis v. Carlton Lumber Co.,* 77 Or. 441, 151 P. 650, and *McGee v. Carlton Lumber Co.,* 77 Or. 446, 151 P. 652, the proof disclosed that the work in which plaintiffs were engaged at the time of the injury involved a risk or danger inherent therein.

The case of *Poole v. Tilford,* 99 Or. 585, 195 P. 1114, cited by plaintiff, was governed by the express provisions of the Employers' Liability Act to the effect that all shafts, wells, floor openings and similar places of danger shall be enclosed; and not by the "and generally" clause of that act.

In the case of *Nordlund v. Lewis & Clark Ry. Co.,* 141 Or. 83, 15 P. (2d) 980, also cited by plaintiff, in this court's discussion of whether the question as to the work involving risk or danger was submitted to the jury, the following statement is made:

"\* \* \* \* we do not believe that the circuit court withdrew that issue from the jury. For it will be observed that the court, having defined the issues and having used the challenged words, continued: ''Your first inquiry, therefore, will be whether the work in which the defendant employed plaintiff involves a risk or danger, and if you find that it did, you will then proceed further and inquire whether in carrying on its work the defendant \* \* \* used the care and precaution required of it by law \* \* \*.''" (141 Or. at p. 89, 15 P. (2d) at p. 982.)

■ Plaintiff urges that the provisions of the Workmen's Compensation Act classifying the operation of foundries, blast furnaces and smelters as hazardous occupations (subparagraph (b) of section 102-1725, O. C. L. A.) afford justification for the instruction given in the case at bar.

Such provisions, in the first instance, are in the nature of instructions or rules of procedure to guide the State Industrial Accident Commission in reference to the allowance or rejection of claims presented under the terms of the Workmen's Compensation Act and such provisions cannot be deemed to be amendments of the Employers' Liability Act.

This results in a reversal of the judgment of the circuit court.

Reversed and remanded.

Submitted on petition for rehearing, April 6, 1948.

*Krause & Evans* and *Irving Korn*, of Portland, for petitioner.

*Wilbur, Beckett, Oppenheimer, Mautz & Souther*, of Portland, contra.

Before ROSSMAN, Chief Justice, and KELLY, BAILEY and BRAND, Justices.

KELLY, J.

■ From the statement of plaintiff's legal proposition No. 2 in his petition for rehearing, it is evident that a clarification of a statement by this writer in the original opinion should be made.

Referring to the opinion by Mr. Justice LUSK in *Fehely v. Senders*, (170 Or. 457, 135 P. 2d 284, 145 A. L. R. 1092), the following statement was made:

"In the light of the authorities there cited, it cannot be said that physical pain alone has been proven unless there is an express, direct statement by the sufferer that he experienced mental as well as physical pain."

Plaintiff in his second legal proposition attributes to this statement exactly the contrary meaning to that which was intended. What this writer intended to convey is that there need not be an express, direct statement by a plaintiff, who has suffered such a decree of physical pain as the testimony in the instant case tends to prove, that he also suffered mental pain in order to justify the submission to the jury by express instruction of the question whether the plaintiff suffered mental pain as well as physical pain.

In other words, we held in the original opinion that the learned trial judge did *not* err in submitting the question of mental pain to the jury.

We are unable to agree with plaintiff, however, that the question whether the work performed by plaintiff involved risk or danger should have been withheld from the jury, and for that reason plaintiff's petition for a rehearing is denied.

Submitted on motion for permission to file a second petition for rehearing and petition to file a brief amici curiae, April 20, 1948.

*Krause, Evans & Korn,* of Portland, for the motion.

*Green, Landye & Peterson,* of Portland, for the petition.

Before ROSSMAN, Chief Justice, and KELLY, BAILEY, HAY and BRAND, Justices.

DENIED.

KELLY, J.

The motion for permission to file a second petition for a rehearing and the petition to file a brief amici curiae misinterpret our decision. The word "universally", as employed in our decision, was not intended to imply that the issue as to whether or not the work involved risk and danger is always one for the jury's determination. We used the word only for the purpose of saying that the evidence in all cases which thus far have been before us was such that the issue as to the risk and danger was one for the jury. Such is also the condition of the record in this case. Nothing said in our previous decision infringes upon the holding in *Olds v. Olds,* 88 Or. 209, 171 P. 1046, which is cited in support of the pending motion.

The motion and the petition is therefore disallowed.