Argued December 5, affirmed December 20, 1973

FEIST, *Respondent, v.* SEARS, ROEBUCK &
COMPANY, *Appellant.*

517 P2d 675

*Richard H. Williams,* Portland, argued the cause for appellant. With him on the briefs were Dezendorf, Spears, Lubersky & Campbell and Laurence F. Janssen, Portland.

*Gary N. Peterson,* Portland, argued the cause for respondent. With him on the brief were Peterson, Chaivoe & Peterson, Portland.

Before O'CONNELL, Chief Justice, and DENECKE, HOLMAN, TONGUE, HOWELL and BRYSON, Justices.

TONGUE, J.

This is an action for damages for personal injuries sustained by a four-year-old child when a cash register in one of defendant's stores fell from a counter and struck the head of the child, causing a basal skull fracture. Defendant admitted liability. The jury returned a verdict of $35,000. Defendant appeals, based upon claimed errors in the admission of testimony and in instructions to the jury. We affirm.

The primary issue on appeal, as stated by defendant, is "whether the trial court erred in receiving testimony about the possibility that plaintiff may contract meningitis as a result of the accident and in permitting the jury to compensate plaintiff for increased susceptibility to the disease in the absence of any evidence that she is likely to contract it."

The medical testimony can be summarized as follows: When the cash register fell on plaintiff's

head she sustained a basal (or basilar) skull fracture "in the depths of the nose back where the nose attaches to the base of the skull." This caused bleeding through the nose and ears which continued for four days, during which plaintiff was in "intensive care" in a hospital. There was also a discharge of cerebral spinal fluid from plaintiff's nose and ears. Dr. Johnson testified that fractures in the basilar area "that tear the lining of the skull or the brain allow the spinal fluid, which bathes the brain, to exude or flow out of the skull, into the, in this case, both the ears and the nose."

Dr. Johnson also testified that during plaintiff's treatment in the hospital she was given antibiotics because upon the tearing of the lining of the skull or brain in the basilar area, the "protective mechanism" of the brain is "disrupted" and that "Once there is an outside entrance, particularly from the nose or mouth or ears, for bacteria to get within that, it will cause infection. This is usually called meningitis * * *."

The hospital records, which were received without objection, included the following entry:

"The concern about ascending meningitis has been stressed with emphasis that it may resemble a 'flu syndrome'."

When asked to explain that entry, Dr. Johnson testified, in response to a question by defendant's attorney "in aid of * * * objection", as follows:

"MR. JANSSEN: Dr. Johnson, this area that you are about to go into now, was that ever anything more than a concern immediately after the accident?

"THE WITNESS: It continues to be a concern for many years, but as years go by, less of a concern."

He then testified, over objection, as follows:

"THE WITNESS: A child is, after having had spinal fluid and having had a fracture and having

this problem of a torn envelope of the brain, is susceptible or is at risk of, for meningitis. In other words, getting reinfected from the bacteria that normally reside in the nose and throat. If this does not occur, in other words, if she doesn't have an acute attack of this meningitis in the first few weeks of this, the chances that she will have it becomes progressively less, so that in the growing child, because the bones becomes more stable, the tear in the envelope is better healed and so on."

He also testified, over continuing objection, that:

"Q  Doctor, how long will this child be susceptible to this type of infection?

"A  There are reports in the literature * * *, after having basilar skull fracture, of developing meningitis secondary to continued leakage, ten, fifteen, twenty years. These are unusual cases.

"Q  Doctor, could you describe for the jury and define for the jury 'spinal meningitis'?

"A  This is an infection of these enveloping, specifically of the two inner envelopes that I talked about before, the arachnoid and the pia. And, in fact, is invasion by bacteria into that lining and this causes a very inflammatory reaction, along with high fever, seizures or convulsions, some brain damage because it does obstruct the drainage of the veins from the brain, and a variety of other like illnesses, like symptoms."

And, on cross-examination:

"Q  Doctor, are you really talking about a possibility when you are talking about spinal meningitis, or meningitis in this case?

"A  Yes.

"Q  Nothing more than a possibility?

"A  That is a better somatic [semantic?] use.

"Q  And you are not saying at all that, based upon reasonable medical probability, this young child will develop meningitis, are you?

"A  No."

\* \* \*

"Q But the incidence is very rare, isn't it?

"A Yes, it is very rare.

"Q Has Mrs. Feist, or anyone in regard to Dana Feist, brought the child in to see you where you thought there was any clinical evidence of meningitis?

"A No."

And, on re-direct examination:

"Q I have one question.

"Doctor, in regard to this meningitis, is it your opinion that, based upon a reasonable medical probability, that she is susceptible to contracting it?

"A She is susceptible, yes."

A motion to strike all of this testimony was then denied.

There was other testimony, however, relating to other continuing effects of the injury. Thus, there was medical testimony that, as a result of nerve damage, the pupil of one eye was slightly larger than the other, that the lid of one eye "drooped" and that these conditions would be permanent, although not resulting in any "functional problem."

The parents also testified that the child had headaches; that she had become irritable and short tempered, and complained of loud noises, although her hearing was normal. There was no evidence, however, that her intelligence was impaired or that she suffered any permanent brain damage.

The child also had two scars on the top of her head, one on the left side toward the front and the other "up on top." The child was shown to the jury, but was not subjected to examination by counsel.

1. *The trial court did not err in the admission of testimony of susceptibility to meningitis.*

First of all, it is important to recognize the distinction between (1) the question of the admissibility of evidence of susceptibility to meningitis from (2) the question of whether, as a matter of sufficiency of evidence, the evidence in this case was such as to satisfy various rules of substantive law. Cf. *Henderson v. U.P.R.R. Co.,* 189 Or 145, 160, 219 P2d 170 (1950).

■ It is, of course, an established rule of substantive law that, in order to establish the necessary causal relationship to support recovery in a personal injury case, the evidence must be sufficient to establish that such a causal relationship is reasonably probable and that for this purpose testimony that an injurious consequence is "possible," rather than "probable," is not sufficient. *Devine v. Southern Pacific,* 207 Or 261, 272, 295 P2d 201 (1956). See also *Barron v. Duke et al.,* 120 Or 181, 194, 250 P 628 (1926).

In 2 Wigmore on Evidence, 776-77, § 663 (1940), the distinction is commented upon as follows:

"(1) In comparatively recent years, a few Courts have refused to accept, in personal injury trials, testimony as to the *possible time of persistence of the injury* or the *possible development* of certain consequences. (Emphasis in original).
"* * *

"* * * [T]he Courts have in many of these rulings proceeded upon a confused apprehension of a legitimate doctrine of the law of Torts, namely, that recovery may be had for such injurious consequences only as are fairly certain or probable, not for merely possible harm. That is, a Court, in holding that the physician may not testify to possible

harmful consequences, is not always ruling that testimony to possible consequences is evidentially improper, but is meaning to rule that such possible consequences are as a matter of substantive law not entitled to consideration at all. This is often the real explanation for such rulings. But the evidential doctrine in question has little standing elsewhere, and should not be extended."

Defendant relies heavily upon *Lorch v. Eglin,* 369 Pa 314, 85 A2d 841 (1952). According to the Court in that case (at 843-44), under quite similar facts (also involving a leakage of spinal fluid), the doctor testified that:

" 'If [this fluid] does become infected we get a condition known as meningitis;' that meningitis is 'a very serious condition,' that 'it *can* result in recovery or death;' that 'it is very *possible* and it happens very frequently in other cases that the fluid becomes infected and the patient develops a meningitis'; that 'this man's future is very insecure,' that 'because of the continued cerebrospinal leak he is sitting on a keg of dynamite; any time he is *liable* to get meningitis; *if* he gets meningitis and he recovers, he is all right; *if* he doesn't something may happen to him.' He further testified that such a leak 'might go on for a year, or it *might* stop tomorrow—he *might* get a meningitis and die, or it might stop, be completely recovered.' " (Emphasis in original)

The court in *Lorch* held (at 844) that this testimony was inadmissible upon the ground that the jury should be prevented from "estimating damages on the basis of conjecture or speculation as to what might occur in the future." The court did not discuss the question of the admissibility of evidence of susceptibility as an independent fact.

However, in the subsequent case of *Boyle v.*

*Pennsylvania Railroad Company,* 403 Pa 614, 170 A2d 865 (1961), the court noted (at 867) that a doctor "was allowed to testify about 'possible future conditions' in making his prognosis" and that "* * * [t]here is no harm in allowing the doctor to explain the possible future effects of the disability." The court distinguished *Lorch* by quoting with approval from another case as follows:

"The problem here involved is one of prognosis on which a doctor cannot be required to express his opinion with the definiteness required in a causation question. In many cases of personal injury the honest opinion of a doctor may well be that a plaintiff will 'gradually improve' or that the injury may 'possibly be permanent or may possibly get better within a year.' This uncertainty of honest medical opinion should not be the basis for any finding by the jury of permanent injury but is sufficient, on the other hand, for the jury to find some future disability."

In the more recent Pennsylvania case of *Schwegel v. Goldberg,* 209 Pa Super 280, 228 A2d 405 (1967), the rule of *Boyle* was applied to facts more similar to those of this case. In *Schwegel,* a child had suffered a fracture of the skull and a contusion or bruising of the brain. The doctor testified that the child, with that injury, "has one chance in twenty of developing seizures at some time in the future up to 15, 20 years from now." In discussing *Boyle,* the court said (at 409):

"The Supreme Court there said, at * * * 170 A2d at page 867. 'The condition is abnormal and there is no harm in allowing the doctor to explain the possible future effects of the disability.' Likewise in this case, a scar on the brain, an abnormal condition, resulted from the accident. There was no speculation or guessing as to that medical fact. Nor

was the neurosurgeon speculating or guessing when, based on statistics in his field of expertise, he indicated the probabilities of this particular plaintiff suffering from epileptic seizures as a result of a condition caused by this accident. There is nothing evidentially improper about this testimony. If we were to rule it out we would be holding that such possible future effects are not entitled to any consideration as a matter of substantive law. See II Wigmore, Evidence § 663 (1), (3rd Ed. 1940). That would be unfair since the action must be brought within the time limitations fixed by law and all damages, past, present and future, must be determined in that one action. Admittedly the probability of this child's getting epileptic seizures is low and it should be weighed by the jury accordingly."

■ We agree with that analysis of the problem. Accordingly, we hold that the trial court in the case did not err in receiving the testimony of Dr. Johnson relating to the susceptibility to meningitis of a child with an injury of this nature, even though meningitis was not probable, but was no more than a possibility.

2. *The trial court did not err in instructing the jury that it could consider susceptibility to meningitis in its award of damages.*

Defendant has assigned as error the giving of the following instruction:

"Now, in respect to that situation, what about susceptibility to future trouble? Is that compensable or is that really saying, that something is merely possible. I will try to convey this concept to you as best I can, recognizing that I cannot comment on the evidence. That before an injury is compensable, before you can fully compensate for an injury or disability, you must find that it has been proven by the preponderance of the evidence, or is probable.

"What if you have something that is proven to you as being probable as a probability there will be a susceptibility, a special susceptibility to injury or disability or disease because of the injury.

"Well, what I am saying is, you can't compensate the plaintiff for probably having meningitis in this case, but you can compensate if you choose to, and if it's been proven to you by the evidence that plaintiff has susceptibility for such a future problem.

"I instruct you, before you can award plaintiff any sum of money for alleged permanent injury or conditions, you must be convinced by a preponderance of the evidence that the permanent injury or condition is probable. It is not sufficient that permanent injury or condition is merely possible."[1]

The trial court also gave further instructions on general damages for pain and suffering and for alleged future and permanent injuries.

Defendant contends that "the condition of being susceptible to a disease is not compensable as such, at

---

[1] Immediately prior to the instruction excepted to, the trial judge said:

"I instruct you, before you can award plaintiff any sum of money for alleged permanent injury or conditions, you must be convinced by a preponderance of the evidence that the permanent injury or condition is probable. It is not sufficient that permanent injury or condition is merely possible."

Immediately following the instruction excepted to, the trial judge said:

"And I am not suggesting one way or the other that you should or should not even consider that, because that is strictly jury work and Judge Jones has no opinion as to what you should not do in this case, or what issues or injuries you should or should not consider, other than as I framed by these instructions.

"So, you are not to award damages for any conditions or injury from which Plaintiff may have suffered or may now be suffering unless it has been established by a preponderance of the evidence in this case that such injury or condition was proximately caused by the accident in question."

least in the absence of any present harm caused by the possibility." In support of that contention plaintiff relies not only on *Lorch v. Eglin, supra,* and some other somewhat similar decisions by other courts, but also upon *Barron v. Duke et al,* 120 Or 181, 250 P 628 (1926), in which we said (at 194):

> "Future consequences which are reasonably to be expected to follow an injury may be given in evidence for the purpose of enhancing the damages. Such apprehended consequences must be such as in the ordinary course of nature are reasonably certain to ensure, in order that the same may be considered by the jury: *Pittsburgh, F. W. & C. R. R. Co. v. Moore,* 110 Ill. App. 304. The trial court correctly informed the jury that 'it is not enough that you believe that a permanent injury is possible.' "

In *Barron,* however, the medical testimony was such that the jury could have found that epilepsy would be the "probable" result of the head injury in that case and a verdict and judgment for plaintiff was affirmed.

■ We agree that medical testimony to the effect that as the result of a serious physical injury, there will be a "predisposition" to the contracting of some disease, i.e., a possibility, is not sufficient evidence to support an award of damages for permanent injury and cannot be properly considered by a jury for that purpose.

We hold, however, that such testimony is sufficient as the basis for a finding by the jury of some disability. We believe, as a matter of common sense, that a jury can properly make a larger award of damages in a case involving a skull fracture of such a nature as to result in a susceptibility to meningitis than in a case involving a skull fracture of such a nature as not to result in any such danger, risk, or susceptibility.

In this case there was medical testimony that, "based upon a reasonable medical probability," this child, as the result of this basal skull fracture, "is susceptible" to contracting meningitis because of possibility that the tear in the lining of her skull or brain may permit bacteria to find their way through her nose or sinuses into her brain and that the "susceptibility" to meningitis will continue until that tear completely heals. The court properly instructed the jury that in awarding damages it could consider "the evidence that plaintiff has susceptibility for such a future problem."

As previously noted, there was other evidence of permanent injury, including testimony relating to plaintiff's scars, drooping eyelid, and the slight difference in the size of the pupils of her eyes, and the jury was properly instructed upon the requirements to be satisfied before making an award for permanent injuries.

For these reasons we affirm the judgment of the trial court.[2]

---

[2] Because of the basis upon which we reach the result, it is not necessary to consider plaintiff's contention that susceptibility to future disease is also compensable because of resulting anxiety and mental anguish, and that the jury could properly infer that this child will suffer from such anxiety and mental anguish in the future, citing Fehely v. Senders, 170 Or 457, 461, 135 P2d 283 (1943); Nielsen v. Brown, 232 Or 426, 374 P2d 896 (1962); Hale v. Electric Steel Foundry Co., 183 Or 275, 191 P2d 396, 192 P2d 257 (1948). See also Figlar v. Gordon, 133 Conn 577, 53 A2d 645, 648 (1947); Heider v. Employers Mutual Liability Ins. Co. of Wis., 231 So 2d 438 (La App 1970); and Annot., 71 ALR2d 338, 341 (1960).

For the same reasons, it is not necessary to consider defendant's contention that anxiety and mental anguish could not be properly considered in this case in the absence of direct testimony that this child actually suffered such anxiety or mental anguish or that she was aware of her susceptibility to meningitis.