Argued February 1, reversed February 23, 1915. Rehearing allowed and reargued June 2, former decision upheld June 22, 1915.

## WOLSIFFER *v.* BECHILL.

(146 Pac. 513; 149 Pac. 533.)

**Master and Servant—Liability for Injuries—Relation Between Parties.**

1. Under a contract with a city to grade a street, which provided that the work should be performed under the personal supervision of the contractor, that no part of the contract should be sublet, assigned or transferred without the written consent of the city, and that no such written consent should release the contractor from any obligation either to the city, or to persons employed by any subcontractor, where the contractors sublet a part of the work without the city's consent, they were liable for injuries to a subcontractor's employee as if he had been in their employ, as the city in the control of its streets and the improvement thereof was exercising a governmental function, and its contracts operated at least upon the parties concerned with the force of a law.

Master and Servant—Actions for Injuries—Questions for Jury.

2. In an action for injuries to an employee of parties engaged in grading a street, caused by falling into a pit which was being filled and alleged to have been due to the failure to provide a safety rail, or similar contrivance to prevent such accidents, the court erred in charging that the case came under the Employers' Liability Act (Laws 1911, p. 16), and that it was for the jury to determine whether such a device as was alleged in the complaint could have been furnished without impairing or destroying the efficiency of the work, as no part of the liability act could apply except the general provision of Section 1 that all owners, contractors or subcontractors, and other persons having charge of, or responsible for, any work involving risk or danger to employees or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine, or other apparatus, and it was for the jury to determine whether the work involved a risk or danger to employees or the public, and whether it was practicable to use a safety rail, or other contrivance.

[As to duty of master to servant, see note in 75 Am. St. Rep. 591.]

Master and Servant—Liability for Injuries—Safety Appliances.

3. That a contract with a city did not require the contractor to provide a safety rail or other contrivance to prevent employees from falling into a pit did not relieve the contractor of liability if such contrivance was required by the Employers' Liability Act.

[As to duty of master to provide safe place for servant to pass to and from work, see note in Ann. Cas. 1913E, 1033.]

From Multnomah: THOMAS J. CLEETON, Judge.

Department 1.     Statement by MR. JUSTICE BURNETT.

This is an action by Fred Wolsiffer against Thos. A. Bechill and W. A. Bechill, copartners doing business as Bechill Bros., and J. P. O'Donnell.

The complaint charges, in substance, that the individuals composing the firm of Bechill Bros. and one O'Donnell, as contractors, were grading a street in the City of Portland using various implements drawn by horses and mules for that purpose; that in doing so they were filling a deep pit partly in the street and required the teams thus engaged to be driven along the head of the slope formed by pouring the loose earth into the excavation; that, although it was practicable

to use a safety rail or some such contrivance to prevent employees from falling into the pit, the defendants negligently failed to provide the same; that during the progress of the work one of the horses fell, and, while under direction of the defendants he was helping the animal to his feet, the plaintiff by the action of the horse was suddenly thrown with great force and violence to the bottom of the pit, whereby he sustained injuries resulting in the fracture of his right femur to his damage.

The answer of Bechill Bros. denies every allegation in the complaint except the one narrating their partnership. They affirmatively defend on the ground that the defendant O'Donnell was an independent contractor in charge of the work and that they had no control over the same. They also interpose the defenses of assumption of risk and contributory negligence on the part of the plaintiff. The answer of the defendant O'Donnell is like that of Bechill Bros., except that he omits the defense of independent contractor.

The replies deny the new matter in each answer. Further replying to the answer of Bechill Bros., the plaintiff alleges that, by virtue of certain ordinances pleaded, they had entered into a contract with the City of Portland for making the improvement in question in which:

They "agreed that no part of the work thereunder should be sublet or assigned without the written consent of the City of Portland, and that the said Thos. A. Bechill and W. A. Bechill should give personal supervision and should have personal charge of the work covered by said contract, and that any persons working under them should be considered merely as employees of said Thos. A. Bechill and W. A. Bechill;

that no consent in writing to any assignment or subletting of the contract hereinbefore mentioned was ever made or entered into by the City of Portland or by any persons in its behalf.''

A jury trial resulted in a verdict and judgment in favor of the plaintiff against all the defendants, and they appeal.

REVERSED.    DECISION UPHELD ON REHEARING.

For appellants there was a brief over the name of *Messrs. Wilson & Neal,* with an oral argument by *Mr. O. A. Neal.*

For respondent there was a brief over the names of *Messrs. Abel & Burnett* and *Messrs. Richards & Richards,* with oral arguments by *Mr. Coy Burnett* and *Mr. O. R. Richards.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. The first question to be considered is the relation, if any, existing between the plaintiff and Bechill Bros. The accident happened February 6, 1913. There is in evidence an agreement in writing dated November 10, 1912, between O'Donnell and Bechill Bros., whereby the former was to do the grading, involving the filling of the pit already mentioned, according to the engineer's plans and specifications, and to receive as compensation 20 cents per cubic yard for excavation and nothing for fill. It was admitted that Bechill Bros. had entered into a contract with the City of Portland in pursuance of a special ordinance authorizing the improvement in question, which agreement contained this condition:

"The said work shall be performed under the personal supervision of the contractor, and no part of this contract, nor any interest therein, shall be sublet, assigned or transferred without the written consent of said city, by its executive board, and no such written consent shall release the contractor from any obligation, either to said city or to the persons employed by any subcontractor, and all subcontractors shall be considered merely as employees of the contractor and may be discharged by said city for incompetency, neglect of duty or misconduct."

The evidence likewise tended to show that the plaintiff was not on the pay-roll of Bechill Bros., but was employed directly by O'Donnell and paid by him. It was also admitted that no consent had been given by the city or by anyone representing it authorizing Bechill Bros. to sublet any of the work to O'Donnell. What then is the legal conclusion to be drawn from this record respecting the relation existing between the plaintiff and the defendants?

In the control of the streets within its boundaries and the improvement thereof, the City of Portland was exercising a governmental function. Its ordinances and contracts made in pursuance thereof operate at least upon the parties concerned with the force of a law. It is analogous to the principle announced by Mr. Chief Justice BEAN in *Salem v. Anson*, 40 Or. 339 (67 Pac. 190, 91 Am. St. Rep. 485, 56 L. R. A. 169). There the City of Salem had granted a franchise to the defendant Anson to use its streets, alleys and highways for the purpose of establishing and maintaining an electric light plant in the city, and had exacted from him a bond in the sum of $5,000, conditioned that he should install his plant and have it in operation by a date named. He utterly failed to construct the plant

in any respect, and the city brought an action to recover the amount of the bond. The court there said:

"The ordinance granting to Anson the right and privilege to use the streets and highways of the city in the construction and maintenance of his plant had the force and effect of a statute, and by his acceptance of its provisions he became bound to comply with its terms as a statutory duty."

The ordinance under which the contract was promulgated in the case at bar required that:

"The contractor or contractors for said improvement shall take entire charge of the work during its progress and shall be responsible for any loss or accident resulting from carelessness or negligence and the improvement shall be completed to the satisfaction of the executive board of the said City of Portland."

By stipulating as they did under the ordinance mentioned, Bechill Bros. in a sense assumed a statutory obligation, the benefit of which inures to any person coming within its terms. They agreed that the contractor should not be released from any responsibility either to the city or to the persons employed by any subcontractor. Under these circumstances, they could not evade their statutory duty by subletting the work to O'Donnell, and, when they attempted to install the latter as an independent contractor, the only effect accomplished as to the questions here involved when measured by their engagement with the city was merely to make him an employee in charge of the work. In short, the dealing with O'Donnell by Bechill Bros. was in derogation of a duty imposed upon them by the very ordinance and the contract under which they were operating and cannot affect their obligation to the plaintiff. In principle it comes within the doctrine

of *Ackles* v. *Pacific Bridge Co.,* 66 Or. 110 (133 Pac. 781), where Mr. Chief Justice McBride said:

"Where a statute or city ordinance requires certain precautions to be taken for the safety of the public in the manner of doing the work, the contractor cannot shift his liability for failure to take these precautions by employing a subcontractor: *Colgrove* v. *Smith,* 102 Cal. 220 (36 Pac. 411, 27 L. R. A. 590); *Luce* v. *Holloway,* 156 Cal. 162 (103 Pac. 886); *Storrs* v. *City of Utica,* 17 N. Y. 104 (72 Am. Dec. 437); *North Chicago St. R. R. Co.* v. *Dudgeon,* 184 Ill. 477 (56 N. E. 796); *Robbins* v. *Chicago City,* 4 Wall. 657 (18 L. Ed. 427); *Hawver* v. *Whalen,* 49 Ohio St. 69 (29 N. E. 1049, 14 L. R. A. 828); *Werthheimer* v. *Saunders,* 95 Wis. 573 (70 N. W. 824, 37 L. R. A. 146)."

In *Morgan* v. *Bross,* 64 Or. 63 (129 Pac. 118), the defendant was a contractor engaged in the construction of a brick building, and the plaintiff was a plumber installing pipes on the first floor beneath where the defendant and his employees were at work on the fourth story. The action was instituted under the employers' liability law, the substance of the charge being that for want of temporary floors in the edifice, as required by a building ordinance of the City of Portland a brick falling from where the defendant was at work struck the plaintiff and injured him. At the trial the defendant was refused the right to show that the man in charge of the carpenter work had agreed to install the temporary floors. This court, however, approved this action of the Circuit Court, speaking by Mr. Justice Moore in this language:

"The obligations to lay such coverings, in order to protect the life and limbs of persons employed in a building under construction, having been placed by the statute and ordinance referred to on a contractor,

the defendant, who sustained that relation to the owner, could not escape liability for a neglect to comply with such requirements by showing that the carpenter had agreed to discharge that duty."

2. The principal error assigned by all the defendants is that the Circuit Court was mistaken in holding the case to be one stated under the initiative act of November, 1910, and commonly known as the employers' liability law (Chapter 3, p. 16, Laws 1911; L. O. L. xxxvi). That is a statute which specifies in its title that:

It is "for the protection and safety of persons engaged * * in any dangerous occupation, and extending and defining the liability of employers in any or all acts of negligence, or for injury or death of their employees, and defining who are the agents of the employer. * * "

Section 1 of that act, so far as deemed even possibly applicable to the case in hand, reads thus:

"All owners, contractors, subcontractors, corporations, or persons whatsoever, engaged in the construction, repairing, alteration, removal, or painting of any building, bridge, viaduct, or other structure, or in the erection or operation of any machinery, or in the manufacture, transmission, and use of electricity, or in the manufacture or use of any dangerous appliance or substance, shall see that all metal, wood, rope, glass, rubber, gutta percha, or other material whatever, shall be carefully selected and inspected and tested so as to detect any defects, and all scaffolding, staging, false work, or other temporary structure shall be constructed to bear four times the maximum weight to be sustained by said structure, and such structure shall not at any time be overloaded or overcrowded; and all scaffolding, staging, or other structure more than twenty feet from the ground or floor shall be secured from swaying and provided with a strong and efficient

safety rail or other contrivance, so as to prevent any person from falling therefrom, and all dangerous machinery shall be securely covered and protected to the fullest extent that the proper operation of the machinery permits, and all shafts, wells, floor openings, and similar places of danger shall be inclosed, * * and generally, all owners, contractors, or subcontractors, and other persons having charge of, or responsible for, any work involving a risk or danger to the employees or the public, shall use every device, care, and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine, or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices.''

Section 2 declares:

''The manager, superintendent, foreman, or other person in charge or control of the construction or works or operation, or any part thereof, shall be held to be the agent of the employer in all suits for damages for death or injury suffered by an employee.''

Because of the terms of the ordinance and the contract made by Bechill Bros. with the City of Portland, they could not shuffle off their responsibility for injury happening upon their works to one rightfully in employment there. In actually subletting the contract to O'Donnell, as already pointed out, they effected nothing more than to place him in charge and control of the work. By virtue of Section 2 of the act, there was cast upon him by operation of law as a result of this transaction an agency on behalf of the defendants Bechill Bros., and, when he employed the plaintiff to work on the improvement, the legal effect that transaction had was to make the latter the employee of Bechill Bros. if that were necessary to give him the

benefit of the act. In substance, when the plaintiff accepted employment from O'Donnell under the cir- cumstances disclosed by the record, he was contracting with an agent of undisclosed principals, Bechill Bros., who are liable when discovered.

To bring himself within the statute, plaintiff alleges that in the prosecution of the undertaking mentioned the defendants used "in all of said work and at all of said times, plows, slips, fresnoes, wheel-scrapers, dump-wagons, horses and mules, and that said wheel-scrapers, fresnoes and dump-wagons constitute and are machinery, and that as such contractors the defendants were jointly engaged in the construction, repairing and alteration of a structure, and in the operation of machinery, and that such work so carried on by defendants involved a risk and danger to the plaintiff and to their employees and to the public."

The defendant excepted to the following instruction given by the trial judge:

"The court determines this case to come under the Employers' Liability Act, for the reason that it holds this fill to be a structure in the meaning of the act, and the law says all structures shall be guarded with every reasonable device; every practicable device which does not impair or destroy the efficiency of the work being carried on. You must first determine whether such a device as was alleged in the complaint, and not furnished, could have been furnished, would have been practicable, and if furnished would not have impaired or destroyed the efficiency of the work. That will be the first thing for you to determine here."

It is charged, indeed, that the defendants were negligent in failing to provide a safety rail or some such contrivance to prevent the plaintiff and other employees from falling into the excavation being filled.

So far as a railing *eo nomine* is concerned, the statute only requires that to be attached to scaffolding, staging, or other structure more than 20 feet from the ground or floor. It is not pretended that any such "scaffolding, staging or other structure" was in use on the works mentioned. The plaintiff was not at any time 20 feet from the ground. Neither is it claimed that the accident happened on account of any defect in any of the implements or machines in use at the time. Failure to see that "all metal, wood, rope, glass, rubber, gutta-percha, or other material whatever, shall be carefully selected and inspected and tested so as to detect any defects," is not laid to the charge of the defendants. It is clear that nothing is alleged here constituting a violation of the detailed specifications appearing in the first part of Section 1 of the act in question. If a cause of action exists in the case at bar, it must be classified under the general clause at the end of the section imposing liability upon those engaged in "any work involving a risk or danger to the employees or the public." The testimony clearly establishes, that the plaintiff was rightfully present on the work as a hired laborer. Whether the work involved a risk or danger to employees or the public, and whether it was practicable to use the device mentioned in the pleadings for the safety of those engaged in the service, are questions of fact put in issue by the pleadings to be determined by the jury. By his peremptory instruction that the case comes under the Employers' Liability Act, on the ground that the fill was a structure, the trial judge to all intents and purposes took from the jury the right to decide these issues of fact. Under the pleadings here, the only allegation of fact bringing the case within the terms

of the act is the disputed one of whether or not the work involved risk or danger to the employees. It was the duty of the presiding judge to submit this question of fact to the jury; whereas, in very truth, he practically decided it himself under the instruction quoted. While we hold that a cause of action is stated under the statute mentioned, yet the traversed averments of fact must be left to the decision of the jury.

3. The defendants also contend that the complaint was subject to general demurrer because it did not state that the alleged injury was caused by failure to perform any act required by the contract to be performed. It is true the measures to be taken for the safety of employees are not prescribed by that agreement. These result from the operation of the statute, and the defendants cannot excuse themselves because they were not compelled by their agreement or the ordinance to use the particular device mentioned in the complaint.

For the error in giving the instruction above quoted, the judgment is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

APPROVED ON REHEARING.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE McBRIDE and MR. JUSTICE BENSON concur.

Reargued June 2, former opinion approved June 22, 1915.

## ON REHEARING.

### (149 Pac. 533.)

In Banc.   MR. JUSTICE MCBRIDE delivered the opinion of the court.

Since this case was reargued, we have given it careful consideration, and still adhere to the views expressed in the opinion filed February 23, 1915. For the reasons there given, our former decision is upheld.

FORMER OPINION APPROVED ON REHEARING.