Argued September 10, affirmed September 21, 1915.

# DAVIS v. CARLTON LUMBER CO.

### (151 Pac. 650.)

**Master and Servant—Injuries to Servant—Workmen's Compensation Act—Applicability.**

1. Plaintiff, a teamster, was injured when a lumber truck which he was driving swung around and knocked him off the dock of the defendant lumber company. The truck, which was driven down an inclined driveway, was not equipped with brakes, and it was the custom to drive it so close to the rail that the friction would act as a brake. Owing to the heaviness of the load, the truck swung around. The team with which plaintiff was provided was fractious. *Held*, that the action was governed by Employers' Liability Act (Laws 1911, p. 16), Section 1, declaring that all owners and contractors shall use every device for the protection and safety of their employees; and hence the defenses of contributory negligence and assumption of risk were not available.

> [As to what is "injury" or "personal injury" within the meaning of the Workmen's Compensation Act, see note in **Ann. Cas.** 1915C, 921.

From Yamhill: Webster Holmes, Judge.

In Banc.   Statement by Mr. Justice Bean.

This is an action brought by plaintiff, John T. Davis, against the Carlton Lumber Company and the Carlton Fir Lumber Company to recover damages for an injury received by the plaintiff on April 21, 1914, while employed by the defendants as a teamster.

According to the complaint, the plaintiff, while so employed, was descending one of the companies' docks from the main lumber-yard to the planer and driving a team attached to a two-wheeled truck loaded with lumber, when the truck swung around, causing him to be knocked off the dock and producing the injury. The lumber-yard is located upon a dock or platform, no part of which is more than 10 or 12 feet above the ground. In order to get from the main part of the yard to the planing-mill, it is necessary to pass over

the dock or slip, which is 150 feet in length and declines something like 8 or 9 feet. The platform upon which Davis was driving was about 16 feet in width. Two timbers 12 inches wide were placed thereon, about 8 feet apart, leaving a driveway of that distance, with 3 feet on each side of the timbers, so that the driver had a 3-foot space upon which to walk and drive the team of horses down the incline. At the particular place of the injury it was necessary for the teamster to make a sharp turn and drive down the incline with the left wheel of the truck rubbing against the guard-rail at the left side of the driveway. The wheel, pressing against this rail, tended to brake or hold back the truck. At this place the load, as frequently happened, turned while rounding the curve from the dock to the driveway, so that the front of it swung over the walkway, striking Davis and knocking him off the walk to the ground beneath, which was covered with sticks and timber. Davis was required to drive at the front of the load with his right hand pressing against it, thereby attempting to guide it so that the load would not swing out over the walkway; but it was so heavy and swung so quickly that he could not hold nor guide it. Customarily one or two men accompanied each truck load down the incline, and were required to be at the rear end of the load of lumber to keep it from losing its balance. Because of the absence of a brake on the truck, the defendants adopted a way of braking or checking the truck, aside from driving so that the left wheel would press against the guard-rail, by requiring another laborer to place a stick or a 4x4 in such a position in relation to the right wheel that the truck would be checked and prevented from running away down the incline.

The specific charges of negligence are as follows: (a) The dock was constructed with sharp turns and angles. (b) The footpath is dangerous and unsafe, in that it is too narrow to allow the driver to work in safety, and to escape being hit by the swinging load of lumber and thrown therefrom. (c) The defendants negligently permitted debris, pieces of lumber, and waste material to accumulate on the pathway. (d) The pathway could have been of a width sufficient to enable the driver to work in safety without interfering with the efficiency of the work. (e) One of the horses in the team was fractious and unsafe. (f) The truck had no controlling instrumentality to keep it from swaying or being thrown around violently, and could have been provided with an appliance which would have prevented the same from swinging without interfering with its use. At the time of the accident the plaintiff had been at work for the defendants about 7 hours. The court refused to instruct the jury, as requested by defendants, that assumed risk and negligence of the plaintiff were defenses. On the contrary, it instructed that the case came within the purview of the Employers' Liability Act, and that such defenses could not be maintained. A verdict for $1,000 was rendered by the jury, and from a judgment thereon defendants appeal.                                  AFFIRMED.

For appellants there was a brief over the names of *Mr. F. C. Howell, Messrs. Wilbur, Spencer & Beckett, Mr. A. L. Clark* and *Messrs. McCain, Vinton & Burdett*, with an oral argument by *Mr. Howell*.

For respondent there was a brief over the names of *Mr. Isham N. Smith, Mr. Lon L. Parker* and *Mr. Richard Talboy*, with an oral argument by *Mr. Smith*.

MR. JUSTICE BEAN delivered the opinion of the court.

The sole question contended for in this case is whether or not the same comes within the provisions of the Employers' Liability Act (Laws 1911, p. 16). The pleadings and the evidence in this cause bring the same within the scope of the above act: *Schulte* v. *Pac. Paper Co.*, 67 Or. 334 (135 Pac. 527, 136 Pac. 5). The proof fairly shows that the work in which the plaintiff was engaged at the time of the injury involved a risk or danger inherent therein. It appears that the walk for the teamsters beside the roadway, which had sharp curves and angles, was too narrow for safety; that other workmen had been knocked therefrom by loads of timber; and that the walk could have been widened; and the efficiency of the structure still have been preserved. It is shown that waste material was allowed to accumulate on the walkway; that the truck had no brake or contrivance to keep the same from being thrown violently around across the pathway; that it was practicable to use instrumentalities which would have steadied the load and prevented it from swinging; that one of the horses in the team was fractious. The jury could fairly find under all the circumstances that on account of the negligence of the owner the premises were not a safe place for the plaintiff to work.

Section 1 of the Employers' Liability Act, after making specific requirements, contains the following command:

"And generally, all owners, contractors or subcontractors, and other persons having charge of, or responsible for, any work involving a risk or danger to the employees or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by

the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices.''

It is the position of counsel for defendants that the case does not come within either the specific provisions or the general clause of the act.   It may now be regarded as settled by the decisions of this court that the general clause of the law quoted above is not restricted to the particular persons and acts mentioned in the first part of the section, but that it amplifies the scope of the statute, by extending its injunction to all persons having charge of or responsible for any work involving a risk or danger to the employees or the public: *Dunn* v. *Orchard Land & Timber Co.,* 68 Or. 97 (136 Pac. 872); *Heiser* v. *Shasta Water Co.,* 71 Or. 566 (143 Pac. 917); *Reed* v. *Western Union Tel. Co.,* 70 Or. 273 (141 Pac. 161); *Browning* v. *Smiley-Lampert Lumber Co.,* 68 Or. 502 (137 Pac. 777); *Hartman* v. *Oregon Elec. Ry. Co., ante,* p. 310 (149 Pac. 893).   In other words, that meaning should be given to the clause quoted which its language plainly imports.   It directs that, in the kind of work described therein, every device, care and precaution shall be used which it is practicable to employ.   When it is averred and proved that in hazardous employments, coming within the purview of such clause, an injury to life or limb results on account of the neglect to use such devices and care, when the same could have been done practicably without destroying the efficiency of the apparatus used or impairing the result of the work, the persons named are liable to respond in damages therefor.

The cause having been properly tried under the statute, there was no error in the refusal of the trial court

to instruct the jury according to the rules of the common law upon the questions of assumption of risk and contributory negligence.

Finding no error in the record, the judgment of the lower court is affirmed.          Affirmed.

Mr. Justice McBride did not sit.