Argued January 26, reversed March 21, petition for rehearing
denied April 18, 1950

# WILLIAMS ET AL. *v.* CLEMEN'S FOREST
# PRODUCTS, INC., A CORPORATION

216 P. (2d) 241
217 P. (2d) 252

*Karl T. Huston*, of Corvallis, argued the cause for appellant. On the brief were Oehler & Huston, of Corvallis, and Crum, Dusenbery, Martin & Schwab, of Portland.

*Orval N. Thompson*, of Albany, argued the cause for respondents. With him on the brief were Weatherford & Thompson, and Willis, Kyle & Emmons, all of Albany.

Before LUSK, Chief Justice, and BRAND, BELT, ROSSMAN, and HAY, Justices.

## BRAND, J.

Calvin Clate Williams, an employee of the defendant Clemen's Forest Products, Inc., met his death while in the course of his employment in the sawmill operation of the defendant. His widow and three minor children brought this action for damages on the theory that the case was controlled by the provisions of the Employers' Liability Act. The widow is the guardian ad litem of the minor children. Without going into details as to the allegations of the complaint at this time, it is therein stated that the defendant operated a sawmill which involved risk and danger to its employees and to the deceased in particular, and that it failed to use every device, care and precaution which it was practical to use for the safety of its employees. It is stated that as a part of the sawmill operation, it negligently operated a framework attached to the sawmill and extending away from it at a height of 35 feet, over which was run by power machinery a so-called elevator, consisting of belts, chain and cross pieces, which was kept in motion and was used for the purpose of moving mill ends, slab, and other refuse from the sawmill to

a pile where the refuse was consumed by fire or otherwise disposed of. It is alleged that the elevator could practically have been equipped with side boards to prevent pieces of timber from falling out, but that there was no such equipment and that pieces did fall out, and that one of them was negligently allowed to fall upon the head of the deceased, causing his death. The defendant denies negligence and liability.

After trial upon the merits, the jury returned a verdict for the defendant, and judgment was entered thereon. The plaintiffs then moved the court for an order granting a new trial, basing the motion, as they said:

" * * * upon the following ground, under Section 5-802, O. C. L. A.:

1. Insufficiency of the evidence to justify the verdict.

2. That the verdict is against law.

3. That the verdict does not square with the evidence or with the law.

This motion is further based upon all the evidence and the instructions given by the Court to the jury in this cause and upon the following and other decisions of the Supreme Court of the State of Oregon."

The court, after hearing, found:

"1. That there is no evidence to justify the verdict;

2. That the verdict is against the law;

3. That the verdict does not square with the evidence or with the law;"

It therefore set aside the verdict and granted a new trial. The defendant appeals, assigning as error the order granting a new trial.

The order of events and the dates of their occurrence are as follows: 10 June 1948, verdict for the defendant; 11 June, motion for new trial; on 12 June, judgment for defendant on the verdict of the jury; on 28 July (more than 30 days after the filing of the judgment), order setting aside the verdict and granting a new trial. The statute provides that:

"If a new trial is granted by the court on its own motion, the order shall so state and shall be made within 30 days after the filing of the judgment. * * *" O. C. L. A., § 5-806.

It is therefore clear that in the case at bar, the authority of the trial court to grant a new trial more than 30 days after the filing of the judgment, was limited by the statute which provides that:

"In all cases of motion for a new trial, the grounds thereof shall be plainly specified, and no cause of new trial not so stated, shall be considered or regarded by the court. * * *" O. C. L. A., § 5-804.

It will be observed that the first ground specified in the motion for a new trial was "Insufficiency of the evidence to justify the verdict", and that the first ground specified by the court for granting the motion was "That there was no evidence to justify the verdict". This portion of the motion is phrased in the language of O. C. L. A., § 5-802, which authorizes the granting of a new trial for "(6) Insufficiency of the evidence to justify the verdict or other decision, or that it is agianst law;" But the authority to grant a new trial under that section has been restricted by the provisions of Art. VII, section 3 of the constitution, which forbid the trial court from reexamining a fact tried by a jury "unless the court can affirmatively say there is no evidence to support the verdict." We

will assume that, by the language employed in the motion and order, it was intended merely to assert that there was no substantial evidence to support the verdict.

The brief which was filed in the circuit court presents the following proposition in support of the motion for a new trial:

"Where the evidence is not conflicting and shows negligence on the part of the defendant and the Court instructs the jury as under such conditions, the jury must find for the plaintiff. A verdict contrary to the evidence and to the instructions will be set aside. The ruling of the Court in so doing is not a violation of Section 3 of Article VII of the Constitution."

In support of this proposition, three cases were cited. In *Camirand v. De Lude,* 124 Or. 189, 264 P. 355, the plaintiff brought suit for the alleged alienation of her husband's affections. Verdict was for the plaintiff and the defendant appealed. This court held that there was no evidence of any wrongful act by the defendant and that a motion for directed verdict should have been allowed. The judgment was reversed and the action dismissed. The case merely states the familiar rule. The only difficulty is in its application in specific cases. The second case cited in support of the motion was *Tou Velle v. Farm Bureau Co-op. Exchange,* 112 Or. 476, 229 P. 83, 229 P. 1103. That was an action on contract for agreed purchase price of goods sold. It was held that if the defendant was liable at all under the evidence, it was liable for $786.28, and the court had so instructed. The jury returned a compromise verdict for the plaintiff for one-half of the amount specified. It was held that the jury violated their legal duty and that a new trial should be granted. The third case

cited was *British Empire Ins. Co. v. Hasenmayer,* 90 Or. 608, 178 P. 180. That was a contract case similar to the Tou Velle case, in each of which an impossible verdict had been returned.

Upon this appeal the plaintiff asserts the same proposition supported by the same authorities which were presented on the motion for new trial. The cases throw no light on the case at bar. The second and third grounds specified in motion for new trial add nothing to the first specified ground. It was argued before the trial judge that the court had instructed the jury "that the defendant must use every care, precaution and device practical to use" and that the jury had violated the instruction. The instruction given was not as contended by the plaintiff. Under the instruction given the duty to use every care and precaution was made contingent upon a finding by the jury that the work involved risk or danger. The court, as the basis for its instructions quoted the "and generally" clause of the Employers' Liability Act as follows:

" ' * * * and generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employees or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliances and devices.' "

It then gave the following instructions, both of which were requested by the plaintiff:

" * * * The burden is upon the plaintiffs in this case to prove by a preponderance of the evi-

dence that the work in which the defendants were engaged and in which decedent Williams was employed, involved a risk or danger to the employee. This case is brought under the statute. It is what is termed a statutory action and unless the plaintiffs have proved this element of the case by a preponderance of the evidence, they cannot recover in this case. If you find by a preponderance of the evidence that the plaintiffs have proved that the work in which the plaintiffs' decedent was engaged involved a risk or a danger to the said decedent Williams, then you will consider the other questions in the case.

" * * *

"If you find from a preponderance of the evidence that the work being carried on by the defendant did involve a risk or danger to the said deceased Williams, and you further find that the defendant did not use every device, care, and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the apparatus being used and without regard to the additional cost of suitable material or safety appliances and devices in one or more of the particulars set forth in the complaint and as a result of such failure, if there was such failure, the decedent Williams was killed, then your verdict should be for the plaintiffs."

The court also instructed as follows:

"I instruct you that you should determine from the evidence in this case whether or not the work in which the deceased, Clayton C. Williams, was engaged at the time of his death involved risk and danger, and you should not presume that it involved risk and danger from the mere fact that an accident occurred."

The plaintiff took no exception to any instruction. The verdict was not contrary to any instruction on the

law, nor can a verdict be set aside merely because it does not "square with the evidence".

The action was brought upon the theory that the Employers' Liability Act controls. This appears from the fact that the plaintiffs are the persons named in the statute as the proper parties in actions for death brought under the act. O. C. L. A., § 102-1604. *Nordlund v. Lewis & Clark R. R. Co.*, 141 Or. 83, 87, 15 P. 2d 980. The case was tried and the instructions were given upon the assumption that the action was so brought. The unusual feature of the case is, that it was a verdict for the defendant which was attacked on the alleged ground that there was no evidence to support it. The principle issue is whether the work in which deceased was engaged involved risk or danger. Plaintiffs present as their first point in support of the order granting a new trial, the following:

> "Where the allegation in the complaint and the uncontradicted evidence establishes that the deceased employee was killed while engaged in working in a sawmill operation this Court has held that the work involves a risk and danger inherent therein."

If this proposition is to be supported on the law, and under the evidence, then the trial court should have instructed the jury as a matter of law that the employment involved risk and danger, for the deceased was certainly working in a "sawmill operation". And, if the existence of risk and danger should have been but was not decided as a matter of law, the trial court would have had authority to grant a new trial, notwithstanding the fact that the plaintiffs requested and the court gave an instruction which directed the jury to determine that issue as a question of fact. Even an

invited error could have been corrected by the granting of a motion for a new trial if the grounds specified in the motion reached the error committed. Giving to the motion a liberal construction, we will treat it as an assertion that the court should have held as a matter of law that the operation involved risk or danger to the deceased.

We now examine the validity of the proposition last quoted from plaintiffs' brief. The first case cited in support is *Davis v. Carlton Lumber Co.*, 77 Or. 441, 151 P. 650, decided in 1915. In that case the plaintiff sued the defendant lumber companies for injuries suffered by being knocked off of a walk on defendants' dock while driving a team attached to a two-wheeled truck loaded with lumber. The plaintiff was driving down an incline on a narrow platform. In so doing, the plaintiff had a three-foot space upon which to walk. The driveway was constructed with sharp turns and angles. The footpath was alleged to be too narrow and dangerous. It was also alleged that one of the horses was unsafe; that the defendants negligently permitted debris and pieces of lumber to accumulate on the path, and that the truck had no brakes or any instrumentality to keep it from swaying or being thrown around violently, and that it could have been properly equipped. There was a verdict for the plaintiff and defendants appealed. This court said:

"The sole question contended for in this case is whether or not the same comes within the provisions of the Employers' Liability Act (Laws 1911, p. 16). The pleadings and the evidence in this cause bring the same within the scope of the above act: Schulte v. Pac. Paper Co., 67 Or. 334 (135 Pac. 527, 136 Pac. 5). The proof fairly shows that the work in which the plaintiff was engaged at the time of

the injury involved a risk or danger inherent therein. * * *

" * * *

" * * * The jury could fairly find under all the circumstances that on account of the negligence of the owner the premises were not a safe place for the plaintiff to work."

Since the jury had found for the plaintiff, there is nothing in the quoted statement of this court which indicates an intention to hold that the question of risk or danger was one of law for the court rather than one of fact for the jury. The contrary is indicated. However, in the statement of fact preceding the opinion of the court, it is said that the trial court refused to instruct on assumption of risk and contributory negligence as defenses, but "On the contrary, it instructed that the case came within the purview of the Employers' Liability Act * * *". Since judgment for the plaintiff was affirmed, we suppose counsel draws an inference that the existence of risk or danger was properly decided by the trial court as a matter of law. It is true that the trial court instructed the jury that the action was brought and came within the purview of the Employers' Liability Act. But the court also stated to the jury that the plaintiff claimed that the facts "rendered it dangerous, and that it could have been made safe * * * by these defendants." The court added, "It is for you to determine from this evidence, whether or not that is the truth, and he must establish that by the greater weight of the evidence * * *". Thus, it is not clear that the trial court intended to do more than to state that the action was brought under the Employers' Liability Act and that it was for the jury to decide both questions; first, whether the situation was one of inherent danger, and, second, whether

there were practicable means by which the situation could have been made safe.

The second case cited is *McGee v. Carlton Lumber Co.*, 77 Or. 446, 151 P. 652, also decided in 1915. In that case a different plaintiff was suing the same defendants who were involved in the Davis case. The injury occurred on the same premises. The case was tried by the same judge and the opinion on appeal was written by the same justice of this court. The plaintiff was a teamster working on the dock. He drove his team and load of lumber under an overhead mono-rail when there was only about six inches of space between his wagon-bed and the overhead timbers. He raised up from the seat on the bed of the wagon and his head was struck by the mono-rail. He claimed that there was no brake on the wagon; that one of the horses was fractious and that the mono-rail was too close to the driveway. There was a verdict and judgment for the plaintiff. On appeal the court said that the evidence "disclosed that the work in which plaintiff was engaged involved a risk or danger to him; that there was a lack of the use of devices, care and precaution on the part of defendants for the protection and safety of life and limb". It was held that there was no error in charging the jury under the Employers' Liability Act, and judgment was affirmed. The opinion of this court does not disclose, however, that the answer of the defendant alleged that the place of the accident was unsafe and that the plaintiff knew of the danger and hazards involved, nor does it disclose the fact that the trial court had in fact instructed the jury that the defendant was bound by his admission that the place involved was dangerous. Thus it appears that neither the trial court nor this court decided the issue of risk or danger as a matter of law except as above stated, by reason of a

judicial admission of the fact. In both cases the element of risk and danger had first been found to exist by a jury, and the inquiry related, not to general risks in sawmills, but to the specific risks involved in work that was being done at the time of the injury.

In *Nordlund v. Lewis & Clark R. R. Co.*, supra, an instruction was given which first intimated that the Employers' Liability Act applied, and then stated that the question of risk or danger was one for the jury. In that case the verdict was for the plaintiffs. Upon appeal, the defendant argued that the court had erroneously instructed the jury that the case fell within the provisions of the Employers' Liability Act. This court held that the instructions were not subject to that criticism. It held that the question of risk or danger had been submitted to the jury for decision and the judgment was affirmed. There is a dictum that:

" * * * if an affirmance or reversal of this judgment were dependent upon a determination whether the facts could justify a court in holding as a matter of law that the deceased's work subjected him to sufficient danger to bring him within the protection of the act, we would not hesitate to affirm the judgment * * *." (Nordlund v. Lewis & Clark R. R. Co., supra).

But the court also said:

" * * * Very likely a case would have to be a rare one which would justify a court in withdrawing from the jury the issue whether the work involved sufficient danger to render applicable the act * * *"

In any event, that was the case of a workman killed while riding on a loaded logging truck, when its forward wheels jumped the rail owing to the unsafe condition of the railroad track. The facts bear no resemblance to those in the case at bar.

The last case cited is *Hale v. Electric Steel Foundry Co.,* 183 Or. 275, 191 P. 2d 396, 192 P. 2d 257. The defendant appealed from a verdict and judgment for the plaintiff, claiming that the trial court erred in withholding from the jury the question as to whether the work performed by the plaintiff involved risk or danger. This court held that error had been committed and quoted from *Wolsiffer v. Bechill,* 76 Or. 516, 146 P. 513, 149 P. 533, the following:

"* * * Whether the work involved a risk or danger to employees or the public, and whether it was practicable to use the device mentioned in the pleadings for the safety of those engaged in the service, are questions of fact put in issue by the pleadings to be determined by the jury. By his peremptory instruction that the case comes under the Employers' Liability Act, * * * the trial judge to all intents and purposes took from the jury the right to decide these issues of fact."

Following the quotation the court said:

"The same course was taken by the learned trial judge in the instant case. In cases wherein the 'and generally clause' of the Employers' Liability Act has been invoked, as in the case at bar, this court has universally adhered to the holding in Wolsiffer v. Bechill, supra * * *"".

Many cases are cited in support. On petition for rehearing, the court qualified its statement that we have "universally" adhered to the holding in *Wolsiffer v. Bechill,* and said:

"* * * We used the word only for the purpose of saying that the evidence in all cases which thus far have been before us was such that the issue as to the risk and danger was one for the jury. Such is also the condition of the record in this case. Nothing said in our previous decision infringes upon

the holding in Olds v. Olds, 88 Or. 209, 171 P. 1046, which is cited in support of the pending motion."

If plaintiffs can claim any support from *Hale v. Electric Steel Foundry Co.*, supra, it must be because of the implied approval of the case of *Olds v. Olds,* 88 Or. 209, 171 P. 1046. In the Olds case, the plaintiff, relying upon the Employers' Liability Act, brought an action for damages. He was employed by the defendant to aid in the construction of a bridge on a public highway and had been sent with team and wagon to secure a load of lumber and bring it to the bridge. In returning with the lumber, and while descending a steep hill, the lumber crowded upon the horses. They ran away and plaintiff fell to the ground and was injured. It was contended that the wagon was defective by reason of the want of brakes. The jury found for the plaintiff. We have examined the original record and find that the court instructed the jury that the statutory duties were imposed upon the employer "in all hazardous employments and it is for you to determine in this case, under the conditions surrounding this employment, as to whether it was hazardous or not, under the evidence in this case." Thus it appears that the question of risk or danger was submitted to the jury. But this court on appeal used language tending to indicate that there was risk or danger as a matter of law, and the court based its conclusion upon provisions in the Workmen's Compensation Act. The court said:

"* * * In another enactment 'engineering work,' in the performance of which the plaintiff was engaged when he was injured, is declared to be one of the 'hazardous occupations': Gen. Laws Or. 1913, Chap. 112, §§ 13 and 14. The term last employed is a legislative classification of a peril to which the plaintiff was exposed, and though the

phrase is used in another statute it relates to a 'work involving a risk or danger to the employees' as specified in Section 1, Gen. Laws Or. 1911, Chap. 3. The testimony does not disclose how far it is from the hill where the plaintiff was hurt to the bridge which the defendant was building. If it be assumed, however, that the distance is so great that it can certainly be said the plaintiff was not then engaged in 'engineering work' the services which he was discharging were rendered hazardous because the defendant furnished a wagon, the tongue of which was too short, and neglected to supply a rope or chain with which to lock the wheels. In any event, therefore, the plaintiff, when he was injured, was performing labor which involved risk and danger to employees, within the specifications of the Employers' Liability Act. * * *''.

To the extent to which the court relied upon provisions of the Workmen's Compensation Act for the purpose of determining that work involved risk or danger under the Employers' Liability Act, the case is contrary to the holding in *Hale v. Electric Steel Foundry Co.,* supra, where it is said that the provisions of the Workmen's Compensation Act "cannot be deemed to be amendments of the Employers' Liability Act". To the extent that the court held that the work of driving a team without rope or chain with which to lock the wheels involved risk or danger as a matter of law, we hold that the court was either in error or else that it merely meant to say that since the question of risk or danger had been submitted to the jury, and the jury had found for the plaintiff, the work specified was under the Employers' Liability Act.

██ None of the cases cited by the plaintiffs support the contention that risk and danger is established as a matter of law whenever a workman is injured "while

engaged in working in a sawmill operation''. On the contrary, the court has, in each instance, considered the specific circumstances existing at the time of the injury. The rule contended for by the plaintiffs might have some support from the language, though not from the decision in *Fitzgerald v. O. - W. R. & N. Co.*, 141 Or. 1, 16 P. 2d 27. In that case, the court, by Mr. Justice Kelly, said:

> ''To ascertain whether the statute applies to an employee in a given case, the character of service is determined by the contract of employment.
> ''* * *
>
> ''The question is not necessarily what was the employee doing at the very moment he was injured, but what did the terms of his contract of employment contemplate he would do when so directed.
> * * *''

However, it was held that the question of risk and danger was properly submitted to the jury. The verdict was for the plaintiff. The opinion of this court intimated that the quoted portions of O. C. L. A., § 102-1605 extended the scope of O. C. L. A., § 102-1601, the latter section being the one which sets forth the conditions which, if found, render the Employers' Liability Act applicable. O. C. L. A., § 102-1605 is not an extension of the last-mentioned section, but merely defines the conditions under which common law defenses shall not be available. We have added the foregoing comments concerning the Fitzgerald case, because, though the result may have been correct, the decision is not a safe one on which to lean. It is out of harmony with *Hale v. Electric Steel Foundry*, supra, and was virtually overruled by this court in *Barker v. Portland Traction Co.*, 180 Or. 586, 173 P. 2d 288, 178 P. 2d 706. Upon the authority of the latter decision

we hold that whether a case comes under the provisions of the Employers' Liability Act depends upon whether the deceased was, at the time he was injured, engaged in work involving risk or danger. The contract of employment, the general characteristics of the work, or the fact that an employee was working in a sawmill, may in some cases have a bearing on the question of risk or danger, but none of those factors alone are sufficient to require a holding as a matter of law that the employment of the deceased at the time of injury involved risk or danger. The case at bar was submitted under the ''and generally'' clause of the statute. As stated in *Barker v. Portland Traction Co.,* supra, the language of that clause applies only to employments which are inherently dangerous. *O'Neill v. Odd Fellows Home,* 89 Or. 382, 174 P. 148; *Bottig v. Polsky,* 101 Or. 530, 201 P. 188; *Freeman v. Wentworth & Irwin, Inc.,* 139 Or. 1, 7 P. 2d 796. Whether the work in which an employee is engaged is inherently dangerous is ordinarily a question of fact for the jury. *Wolsiffer v. Bechill,* 76 Or. 516, 146 P. 513, 149 P. 533; *Yovovich v. Falls City Lumber Co.,* 76 Or. 585, 149 P. 941; *McCauley v. Steamship ''Willamette'' et al.,* 109 Or. 131, 215 P. 892; *Ferretti v. Southern Pacific Co.,* 154 Or. 97, 57 P. 2d 1280; *Hale v. Electric Steel Foundry Co.,* supra; *Bottig v. Polsky,* supra; *Freeman v. Wentworth & Irwin, Inc.,* supra.

It must be conceded that there may be cases in which the trial court would be authorized to hold as a matter of law that the operation in which deceased was engaged did not involve risk or danger. Such was the case in *O'Neill v. Odd Fellows Home,* supra, in which the plaintiff was employed in an old folks home. While she was hanging up the clothes while wearing a

hobble skirt, she fell from a common step-ladder two or three feet high.

In *Reed v. Western Union Tel. Co.*, 70 Or. 273, 141 P. 161, a fellow employee of the plaintiff, who was working on a telephone pole, dropped a can of paint upon the plaintiff who was working below. There is some language in the opinion of this court which appears to hold as a matter of law that the Employers' Liability Act applied. However, the only actual holding was that the trial court erred in granting a nonsuit and that the plaintiff was entitled to have the case submitted to a jury.

In *Nielsen v. Portland Gas & Coke Co.*, 76 Or. 505, 147 P. 554, plaintiff was engaged in work on the construction of a manufacturing plant. In that work he was required to elevate an iron T-valve, weighing about 500 pounds, about six feet from the ground and affix it to the wall of the building. The work was done with the aid of a gin pole set against the wall and used as a derrick with the aid of a pulley and a chain. The derrick fell, striking plaintiff. Under proper instructions the jury found that plaintiff and defendant had settled the case, consequently verdict and judgment went for the defendant, and on appeal the judgment was affirmed. Nevertheless, this court went further and considered "the effect of any error of the trial court in holding that the case did not come within the provisions of the Employers' Liability Act." It was held that the position of the plaintiff that the cause should be tried under the statute was well-taken. The court cited the provisions of the first portion of O. C. L. A., § 102-1601 requiring that all scaffolding, staging, false work or other temporary structure shall be constructed to bear four times the maximum weight to be sustained, and

also quoted the "and generally" clause. The court appears to have been of the opinion that the case came within the specific provisions of the act, as well as within the "and generally" clause. The court held that if there was negligence on the part of the defendant in failing to fasten the end of the gin pole, there would be an infraction of the Employers' Liability Act. It is not clear that the court intended to say anything more than that the case should have been tried upon instructions covering the Employers' Liability Act, leaving the question of risk and danger to the jury. It also appears that the court considered the case to come within the specific provisions of the first portion of the statute.

In *Lawrence v. Gladitsch,* 179 Or. 111, 169 P. 2d 877, the plaintiff was injured when struck by a boom which was operated by a power-driven winch, hoisting cables and pulleys. There was a verdict for the plaintiff. On appeal this court said, "We think the Employers' Liability Act applies as defendant was engaged in the operation of power-driven machinery * * * Certainly plaintiff was engaged in a work involving a risk or danger * * *." The trial was by the court without a jury and the trial court had made a finding of fact that the defendant was engaged in a hazardous occupation and that plaintiff and defendant are governed by the Employers' Liability Act. This court expressly held that the findings of the circuit court were conclusive. The comment of this court merely confirmed the finding of fact by the trial judge.

In *Dunn v. Orchard Land Co.,* 68 Or. 97, 136 P. 872, the plaintiff fell from a scaffolding or staging 27 feet above the ground which was not protected by a guard rail. The staging on which plaintiff was required to walk was beside a slab haul connected to a sawmill,

and which was a device for the conveying of refuse lumber, similar to the one involved in the case at bar. The court held that the slab haul constituted machinery. The first portion of O. C. L. A., § 102-1601 requires the use of a rail or other contrivance on such staging or scaffolding to prevent any person from falling. The jury returned a verdict for the plaintiff, which was affirmed. This court held that the act applied and that "under the concluding words of the section, [the "and generally" clause] as well as under the first part mentioned, the plaintiff has disclosed a case within the purview of the statute". Here again a specific statutory mandate had been violated and the case was therefore governed by the other provisions of the statute.

In two cases this court has discussed, in general terms, the question as to when a court can say as a matter of law that the special duties imposed by the Employers' Liability Act do, or do not, apply. In *McCauley v. Steamship "Willamette"*, supra, this court said:

> "* * * Cases may occur where the court can say as a matter of law that the work did not involve a risk or danger within the meaning of the statute; O'Neill v. Odd Fellows' Home, 89 Or. 382 (174 Pac. 148); and undoubtedly many injuries may occur where the court can say as a matter of law, and accordingly ought to instruct the jury, that the work in which the injured person was engaged was one involving a risk or danger within the meaning of the 'and generally' clause of the Employers' Liability Act. * * *"

But in that case the judgment was reversed because "the question was one which ought to have been submitted to the jury" but was not.

In *Ferretti v. Southern Pacific Co.*, supra, the court said:

"* * * Ordinarily, whether a work involves a risk or danger is a question of fact for the jury: Fitzgerald v. Oregon-Washington R. & N. Co., 141 Or. 1 (16 P. (2d) 27). In some cases, however, the court has declared, as a matter of law, that a risk or danger was involved: McCauley v. S. S. Willamette, 109 Or. 131 (215 P. 892). In other cases it has likewise declared, as a matter of law, that the work did not involve risk or danger within the meaning of the act: Hoffman v. Broadway Hazelwood, 139 Or. 519 (10 P. (2d) 349) * * *"

The McCauley case did not hold, as a matter of law, that risk or danger was involved, but reversed the judgment because that question should have been submitted to the jury.

In *Hoffman v. Broadway Hazelwood,* 139 Or. 519, 10 P. 2d 349, 11 P. 2d 814, the plaintiff slipped and fell on a slippery floor in a bakery. There was a verdict and judgment for the plaintiff which was reversed on appeal because the court submitted to the jury the question of risk or danger, this court being of the opinion, as a matter of law, that the work in which plaintiff was engaged did not involve a risk or danger within the meaning of the act. A similar situation was presented in *Barker v. Portland Traction Co.,* supra. The plaintiff was the operator of a street car and he stepped from his car to remove snow and ice from a switch over which the car was to pass. The plaintiff slipped and fell on the slippery street and brought suit under the Employers' Liability Act. The trial court instructed the jury that the case was governed by that clause. There was a verdict and judgment for the plaintiff which was reversed by this court. We

held that the work of removing the snow from the clogged switch was not inherently dangerous and was not within the protection of the Employers' Liability Act.

We think that some portions of O. C. L. A., § 102-1601, which precede the "and generally" clause, amount to a legislative determination that certain kinds of activity do involve risk or danger as a matter of law, and in view of the dictum by the learned justice, Lawrence T. Harris in *McCauley v. Steamship "Willamette"*, supra, we do not venture to say that there may not be cases in the future arising under the "and generally" clause in which the evidence of risk and danger will be so clear and undisputed that no inference to the contrary could be drawn. But our analysis of the cases convinces us that whenever there is substantial evidence of risk or danger, i. e., of inherent danger, in an action under the "and generally" clause, the question is as a general rule, one of fact for the jury, and that this court has so considered it notwithstanding some misleading language to the contrary. To hold that there is no evidence that a particular employment involves inherent danger (as in the case of a wet floor in a bakery) is one thing, but it is quite another to hold that a particular employment involves risk or danger as a matter of law. In *Whitten v. Griswold*, 60 Or. 318, 118 P. 1018, this court said:

"* * * Where there is a dispute as to the facts, or if there be no dispute as to the facts, but there may reasonably be a difference of opinion as to the inferences and conclusions deducible therefrom, it is the province of the jury to determine the question."

■ In the case at bar there was much undisputed testimony as to the facts and circumstances but they

were only the materials from which the jury was to draw its inferences and conclusions as to the ultimate question of risk or danger. Furtheremore the verdict was for the defendant who enjoyed the presumption of innocence from wrong, while the burden of proof was upon the plaintiffs. Clearly there was evidence from which a jury could have found that the work in which the deceased was engaged at the time of the accident was inherently dangerous. But they found to the contrary, and unless this was error, there is none which is reviewable on this appeal. In the light of our conclusions as to the law, we turn to the evidence. We will not review the evidence from which the jury might have found for the plaintiff because its existence is acknowledged. In this unique situation our search is only for evidence or inference on which the jury might have found for defendant.

For the purpose of conveying mill refuse from the mill to the place from which it was burned, a conveyor had been constructed. It consisted of a series of long timbers, supported by an "A" frame. Witness Farmer, who was acting as foreman, testified:

"A. * * * and on this was a flat 3 x 12, two flat 3 x 12's, laid down and a plate of steel on top of that; then up at about a 15° angle, or close thereto, for a nine inch piece and a 12 inch piece and steel on that; and the open link chain with lugs was laying in the bottom, and we had added a 12 inch piece.

"Q. How?
"A. We had added the 12 inch piece above that; that was the original structure, and we added a 12 inch piece."

The conveyor had 19 inch sides when first constructed. Thereafter, and before the accident, the sides

were raised 12 inches. The conveyor extended from the mill a distance of 200 or more feet in an easterly direction. At the westerly end, and near the mill, the floor of the conveyor was about 36 inches from the ground. It extended easterly from the mill at a right angle of approximately 12° until it reached a height of 45 feet at its easterly end, at which point the refuse was dumped into the place where it was burned. The refuse was moved through the conveyor by means of chain with lugs at five foot intervals, operated by electric power. Shortly before the accident, defendant was preparing to erect a burner at the easterly end of the main conveyor, in which to consume the refuse. It was therefore necessary to divert the refuse before it reached the easterly end of the main conveyor, and to dispose of it elsewhere, pending the construction of the burner. To accomplish this end, a section was taken out of the main conveyor at about the 35 foot elevation, and a hopper and cross conveyor was constructed at that point to receive and convey the refuse at right angles to the main conveyor and in a southerly direction, and to deposit it at a new place for burning. At the point where the main conveyor had been cut, the material went into the hopper attached to the cross conveyor. The cross conveyor was about seven feet below the level of the main conveyor and about 28 feet from the ground. The hopper had side boards, but was not covered. The north side of the hopper had a retaining wall of about 4½ feet. In the hopper, and to keep the refuse from piling up, there was a deflecting, or shear board, fastened diagonally across the hopper from the southeast to the northeast corner thereof. At the time of the accident, an employee with a long pole equipped with a hook, was working on top of the conveyor above the hopper to keep the refuse straightened out so that it

would not pile up in the hopper. At the time of the accident the cross conveyor had been in operation 2½ days. Immediately under the platform, on which the last-mentioned workman was stationed, there was a switch to shut off the main conveyor. The deceased was employed for general work in and around the mill, according to whatever instructions might be given him. He had worked on the construction of the conveyor and hopper. Just before the accident, he had been wetting down the fire at the east end of the main conveyor, so that the burned could be constructed there. He was then called to a conference by the foreman. At the time of the accident the two men were standing "approximately five feet to the right, facing the way the conveyor extends, the temporary cross conveyor, and about 12 or 14 feet from the center—yes, it would be 18 feet from the center of the main conveyor." We quote further from the testimony of the foreman:

"Q. This block that fell, what was there right above where Clate's body was after the block fell?

"A. The main conveyor was right there. You mean right straight up?

"Q. Yes.

"A. There was nothing there; it was quite a ways over to where the conveyor was. You see the "A" frames run up at an angle and we was outside of the "A" frame."

The witness Gleason, who was working above the hopper testified that he saw the block of wood which struck the deceased and that it came out of the hopper.

We quote:

"Q. Had anything happened to this sheer board immediately prior to the block of wood coming out of the hopper?

"A. Yes, there had been a butt end that had been cut off. The cant had struck the board and split it.

"Q. What shape did that leave the board in?

"A. It was split and the top part was laying back; it left a broad surface.

"Q. Do you mean by that a portion of this sheer board had split and was sticking out from the place where it had been fastened?

"A. Yes.

"Q. How long before the block of wood came out of the hopper had the sheer board been broken?

"A. Just immediately prior to that, less than ten minutes.

"Q. Had you had time to warn anybody at that time that happened?

"A. There was nobody around to tell, and you couldn't leave your position; the refuse was coming all the time.

"Q. Will you state to the jury exactly what happened and how the block of wood came out of the hopper?

"A. There was a big pile of refuse coming up the main conveyor and this block was setting on top of it, and when it tipped over the conveyor this block hit the deflecting board and bounced to the north wall and struck the top board and tipped over.

"Q. Had the sheer board been in its original position, would this block of wood have struck it in this manner?

"A. Had the sheer board been in its original position I don't believe it would have; it hit the broken piece that was laying back.

"Q. What effect did that have?

"A. It gave it a spring like a diving board.

"Q. To your knowledge since you were working there clearing out the hopper, had any blocks of wood or pieces of wood fallen out of the hopper?

"A. Not when the hopper wasn't overloaded or filled up.

"Q. Had there been any blocks of wood fall out prior to that?

"A. No, no blocks of wood.

"Q. Do you know whether any had fallen out prior to your going up there?

"A. No, I don't.

"Q. Was there any way of stopping the elevator?

"A. Yes, there was. Immediately under my platform there was a switch to shut off the main conveyor.

"Q. Had you had time to do that?

"A. I ran down immediately after Merwin Farmer told me to turn off the conveyor, I run down and shut it off."

He also testified as follows:

"A. It fell out of the hopper for the south conveyor.

"Q. The hopper for part of the conveyor system?

"A. It is part of the cross conveyor not shown on this map.

"Q. It threw it out over the top of that?

"A. Over the north end of it—it didn't throw it out; it bounced out.

"Q. It had some force on the way?

"A. This deflecting board had been split up the middle, and it laid the top part back, which would weaken it. When it hit that board, it bounced.

"Q. When it hit that board, it had to be falling with some violence to hit it?

"A. It had a six or eight foot wall.

"Q. And it bounced out of it?

"A. Yes."

The foreman testified:

"Q. You knew that other blocks had fallen from there at times before?

"A. From the hopper, no."

Witness Farris testified:

"Q. And previous to the time that this injury occurred, had any refuse at any time fallen off or out of that hopper?

"A. No, sir, not to my knowledge."

Witness Gleason testified that the chunk which hit the deceased fell about 40 feet. In view of the fact that the hopper was materially below the 35 foot level of the main conveyor, the conclusion must be drawn that the deceased was not under the hopper or cross conveyor but some distance away, as testified to by the foreman.

■ Deceased was not actually performing physical labor at the time he was struck, but that fact is immaterial. He was engaged in work for his employer while conferring with the foreman concerning future work to be performed. But, in view of the evidence, it was for the jury to say whether the plaintiffs had sustained the burden of proving that what the deceased was doing at the place where he was, involved inherent risk or danger. The fact that he was struck while there was not sufficient alone to establish the affirmation of the issue. If the courts had not been put in a constitutional strait-jacket by Art. VII, section 3 of the constitution, a different problem would have been presented, but as said in *Bean v. Hostettler*, 182 Or. 510, 188 P. 2d 636, "That, however, is a question of legislative policy with which the courts can have no concern where the sovereign power has otherwise ordained."

The order granting a new trial is reversed and the cause is remanded to the circuit court with instructions to reinstate the judgment for the defendant.

---

ON PETITION FOR REHEARING

*Weatherford & Thompson,* and *Willis, Kyle & Emmons,* all of Albany, for the petition.

*Oehler & Huston,* of Corvallis, and *Crum, Dusenbery, Martin & Schwab,* of Portland, contra.

Before LUSK, Chief Justice, and BRAND, BELT, ROSSMAN, and HAY, Justices.

BRAND, J.

The plaintiffs have filed a petition for rehearing in which they assert that this court erred in failing to overrule *Melton v. S. E. Portland Lumber Co.,* 160 Or. 500, 85 P. 2d 1308. This amounts to an assertion that we have correctly stated the law and that the error was in the Melton case. We agree. Our statute pro-

vides "If there shall be any loss of life \* \* \* the surviving widow or husband and children \* \* \* shall have a right of action \* \* \* ". O. C. L. A., § 102-1604. We held in effect that the statute means what it says, and that the widow and dependent minor children were properly made parties plaintiff in the pending case. To the extent that a dictum in the Melton case is inconsistent with our holding, it is overruled. Such is the effect of our first opinion wherein we cited *Nordlund v. Lewis & Clark R. R. Co.,* 141 Or. 83, 15 P. 2d 980.

■ In this petition, the plaintiffs, for the first time, contend that they were entitled to prevail as a matter of law under the specific provisions of O. C. L. A., § 102-1601 which precede the "and generally" clause. The case was tried below on the theory that the "and generally" clause controlled. The plaintiffs requested instructions which we set out in our first opinion and which applied that clause as the test, and they repeatedly requested the court to instruct that the question at issue was whether risk and danger were involved. The trial court gave those requested instructions and there were no exceptions reserved to any ruling of the court as to the law. The plaintiffs misapprehend our position concerning the first portion of O. C. L. A., § 102-1601. That part of the statute imposes specific duties upon persons engaged in the erection or operation of any machinery. It imposes specific requirements as to the strength of any scaffolding, staging and the like, without any reference to whether the machinery or the scaffolding be dangerous or not. Such provisions must be obeyed at peril. Other provisions do not apply to all structures or machinery, but do apply only to *dangerous* machinery. The plaintiffs contend that the conveyor

apparatus employed in this case comes within the definition of machinery and by inference, they argue that every apparatus which comes within the dictionary definition of machinery should be held to be dangerous machinery within the meaning of the statute. We suppose that as to any person engaged in operating it, an unprotected power-driven saw would be deemed dangerous machinery, as a matter of law. But to say that everything which can be called machinery is, as a matter of law, dangerous, would be to read out of the statute the word "dangerous". The use of that word implies that there may be machinery which is to be deemed dangerous, only if it is found to be so by the triers of the fact. The court, at pleaintiffs' request, submitted that issue to the jury and the verdict amounted to a finding that the machinery was not dangerous. All other issues raised in the petition for rehearing received careful consideration in our first opinion.

This case may be one of great hardship to the plaintiffs. The result will be particularly harsh if the plaintiffs are denied the $5,000 in insurance which the plaintiff Dayle L. Williams at one time elected to accept under the terms of a policy secured by the defendant company. We are constrained to say that if the courts had not been stripped of the statutory powers which they possessed at common law and under statute, (O. C. L. A., § 5-802) we would have upheld the order of the trial court granting a new trial upon the authority of that statute, and of such decisions as *Multnomah County v. Willamette Towing Co.*, 49 Or. 204, 89 P. 389, and earlier cases which are cited in the annotations to O. C. L. A., § 5-802. Article VII, section 3 of the constitution adopted since those cases

were decided, has deprived the trial court of the power by granting a new trial, to do justice in this case in which we think the evidence strongly preponderated in favor of the plaintiffs on the issue of risk and danger. Under the constitutional provision, "no fact tried by a jury shall be otherwise re-examined in any court * * * unless * * * there is no evidence to support the verdict." When an exorbitant verdict has been rendered for a plaintiff on flimsy testimony despite an overwhelming weight of evidence to the contrary, the impotence of the court to correct the injustice has generally been met with complacence. This case demonstrates that the constitutional provision cuts both ways.

■ When a verdict for damages has been returned for a plaintiff and the provisions of constitution Article VII, section 3 are invoked, the inquiry is whether there is some substantial and ordinarily affirmative evidence favorable to the plaintiff who has the burden of proof. If none is found the constitutional prohibition does not apply and the "fact" may be "re-examined". If evidence is found, the "fact" may not be re-examined. When a jury has rendered a verdict for a defendant who is presumed to be without fault and who has no burden of proof and when, as here, there is evidence or there are inferences which might be drawn from evidence to support the verdict favorable to the one who is presumed to be without fault, the prohibition of the constitution even more clearly prohibits the re-examination of the question of fact tried by the jury which in this case was the existence vel non of risk or danger.

The only error in this case was an error of judgment by the jury. The petition for rehearing is denied.